[L. A. No. 3658.  Department Two.—March 9, 1916.]

## WARINA STARCK, a Minor, by her Guardian ad Litem, W. A. STARCK, Respondent, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Appellant.

NEGLIGENCE—STREET RAILWAY—ACCIDENT TO PEDESTRIAN CROSSING TRACK—RELIANCE ON ORDINANCE LIMITING SPEED.—In an action against a street railway company to recover for personal injuries to a pedestrian resulting from a collision with one of its cars, which occurred while the plaintiff in broad daylight was attempting to cross the car-track in front of the approaching car which she plainly saw, it is error to instruct the jury that the plaintiff had the right to assume, until she knew to the contrary, that the defendant would not violate the city ordinance limiting the speed of the cars.

ID.—DUTY OF PEDESTRIAN CROSSING TRACK.—A pedestrian about to cross a street in front of an approaching car has no right to omit any of the precautions which the law demands, nor to rely upon the strict compliance by the servants of the railway company with the speed laws.

ID.—KNOWLEDGE OF APPROACHING CAR—FAILURE TO SOUND WARNING.— If the pedestrian was aware of the approach of the car, the failure of the railway company to sound an alarm has no causal connection with the accident, and becomes immaterial with respect to its negligence.

ID.—LAST CLEAR CHANCE—KNOWLEDGE OF PLAINTIFF'S POSITION OF PERIL—FAILURE OF MOTORMAN TO USE ORDINARY CARE.—An instruction which, after defining the expression "last clear chance," in effect told the jury that if the motorman saw the plaintiff in such a position that an ordinarily prudent person would have known that she was in danger of being injured, and he then failed to use ordinary care in an effort to avoid injuring her, they should measure the company's liability by the rule of "last clear chance," is in harmony with such rule, which is based not upon opportunity by the exercise of common prudence to observe the danger in which another has placed himself, but upon actual knowledge of such peril.

ID.—EVIDENCE—TIME OF DISCOVERY OF PLAINTIFF'S POSITION OF PERIL. In such action, the motorman of the colliding car should have been permitted to testify when he first discovered that the plaintiff was in danger from his car. His belief and knowledge were relevant facts.

ID.—PLEA OF CONTRIBUTORY NEGLIGENCE.—A plea of contributory negligence, which is set up not merely in denial of the allegations of the complaint but as "a further, separate, and distinct answer and defense," is sufficient.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, A. W. Ashburn, Jr., Frank Karr, R. C. Gortner, and W. R. Millar, for Appellant.

E. B. Drake, for Respondent.

MELVIN, J.—Defendant appeals from a judgment against it, and from the order denying its motion for a new trial.

The action was one for personal injuries received by the plaintiff when she was struck by one of the defendant's electric cars on Sunset Boulevard in the city of Los Angeles. The accident occurred near the place where Elysian Park Avenue runs into Sunset Boulevard. The said boulevard extends east and west and the avenue connects with it from the north. The defendant corporation operates its electric cars on double tracks, the east-bound cars using the southerly track and the westbound the northerly. The plaintiff, just before the accident, had taken her place on the southerly curb of Sunset Boulevard to wait for a car, but she decided to make a purchase at a store on the northeast corner of Sunset Boulevard and Elysian Park Avenue. She stepped off the southerly curb of the boulevard and looked to the west to see if there was a car coming from Hollywood, that is an east-bound car on the track nearest to her. She saw none, but she did observe a west-bound car on the farther track. This car was then about half a block distant. She walked across the southerly track and, as she testified, when she reached a place between the two tracks the west-bound car stopped between her and the store to which she was going. She stopped opposite the middle of the car. She then, as she said, looked to the west and saw a car coming from that direction. This car was a little beyond Allison Street or at a distance from her of approximately three hundred feet. What next happened may best be told in her own words as follows: "After seeing that car I thought I had plenty of time to go around the back end of the car that was standing still. I went at just an ordinary walk. I was not able to

tell how fast the car from Hollywood was coming at that time.   When I got about the rear steps of the car that was standing still something struck me.   I do not know what it was that struck me.   I don't know what became of me after I was struck.   So far as I know I was knocked unconscious. The next thing I knew after I started around the end of the car and was struck was that I remembered something of the dragging.''   The evidence was to the effect that she was knocked against the westbound car and was dragged by it for a number of feet.

Miss Starck was sixteen years of age.   She had lived near the place where the accident occurred for about eight years, and was familiar with the manner of operating cars on Sunset Boulevard.   She was active and in perfect health.   The speed limit for electric cars in that part of the city is twenty miles an hour.   There was evidence to the effect that the east-bound car was moving at a rate of speed beyond twenty miles an hour, some of the witnesses placing it as high as thirty-five miles an hour.   The defendant introduced evidence tending to show that the east-bound car was moving at a rate of speed between fifteen and eighteen miles an hour and that it was not stopping to take passengers but that the sign ''take next car'' was displayed; that the west-bound car did not stop at Elysian Park Avenue; that the plaintiff walked out into Sunset Boulevard as if intending to board the approaching east-bound car.   Testifying with reference to the occurrences at the time of the accident the motorman said: ''As she walked out from the sidewalk, as I went on down, I supposed she wanted the car, and she got within about three feet of the track and kept on going and I saw that she was in danger and didn't want the car, and I threw my brakes over into the emergency and grabbed my gong and began to ring the gong and she walked right on.   She walked on past and just got into clear of my car and stopped as the other car came from the east.

''As far as I could see, I could only see about the front of the steps, she was into the clear.   That was the last I could see.   I could not see out the side on account of the passengers on each side of the car.   I rang my gong four times at about the time when the plaintiff walked out from the curb.   That was all the signals I gave until I saw she was in danger and began ringing my gong as fast and loud as I

could. I continued to ring it until I was past her. And while I was ringing the gong the plaintiff walked on. She paid no attention. She was looking toward the store. Seemed to be looking straight ahead. She didn't change her speed any whatever. There was nothing more that I could have done toward stopping my car immediately that I didn't do when I discovered that the plaintiff was in danger." It is not necessary to refer to the testimony of other witnesses as that of plaintiff is quite as favorable to her case as is that of any other witness and the motorman's statement has the same relation to defendant's theories.

Appellant insists that in any view of the evidence the plaintiff's negligence operated as the proximate contributing cause up to the moment of the accident and that there was no room for the doctrine of "last clear chance." In discussing this phase of the case we may eliminate all questions with reference to the sounding of an alarm by the motorman, because the plaintiff knew of the coming of the car and it makes no difference whether the gong was sounded or not. Indeed counsel for plaintiff concedes this to be the law. We must also assume for the purposes of this discussion that the car was moving in excess of the lawful rate of twenty miles an hour.

Appellant's theory of the case is that the excessive rate of speed, if defendant's servant was violating the ordinance, was not an element in the injury to plaintiff; that she had no right to turn her back to the approaching car upon the supposition that the motorman would not violate the ordinance limiting the speed; and that while the question of contributory negligence or freedom from it is ordinarily one of fact for the jury, where the standard of conduct is so obvious as to be applicable to all persons, one who fails (as it is insisted plaintiff failed) to measure up to that standard under the circumstances, is not entitled to have her case go to the jury.

Undoubtedly the plaintiff was astoundingly careless when she turned her back on the approaching car and walked in a leisurely manner parallel to the track. And undoubtedly one about to cross in front of a suburban or interurban car must use his or her faculties and may not depend upon the compliance by the operator of the car with the local by-law relating to speed. (*Brown* v. *Pacific Electric R. Co.,* 167

Cal. 199, 204, [138 Pac. 1005]; *Hutson* v. *Southern California R. Co.,* 150 Cal. 701, 703,. [89 Pac. 1093]; *Griffin* v. *San Pedro etc. R. Co.,* 170 Cal. 772, [L. R. A. 1916A, 842, 151 Pac. 282].) And undoubtedly there are cases in which a plaintiff so far violates the standard of conduct applicable to all persons that an appellate court may say as matter of law that upon the undoubted facts, the judgment should be in favor of the defendant (*Chrissinger* v. *Southern Pacific Co.,* 169 Cal. 624, [149 Pac. 175]; *Hamlin* v. *Pacific Electric Co.,* 150 Cal. 779, [89 Pac. 1109].) But here we are confronted with a conflict of testimony. The motorman said that he saw plaintiff as she walked from the sidewalk, and that he was then more than three hundred feet from the place where the accident occurred, but that she did not go into the zone of danger until it was too late to stop the car in time to prevent the accident. But she testified that she first saw the car when it was something like three hundred feet away, and that she had already crossed the first track, and was confronted by the car standing on the second track. The jury may have believed that the part of his testimony regarding the distance from which he first noticed her was true, but that her statement with reference to the position which she occupied when the car was three hundred feet from her was correct. This would place her between the westbound car and the southerly track with a clear space of only twenty inches between the two cars if they should pass, and would give play for the doctrine of "last clear chance." We do not wish, of course, to imply any views on the part of this court upon the relative verity of the statements of these two witnesses. We merely illustrate our idea that because of the conflict of evidence there was a case to go to the jury.

But this judgment and order must be reversed because of errors in the instructions.

The court gave the following instruction:

"In determining whether plaintiff was negligent, you will take it that she had the right to assume, until she knew to the contrary, that defendant would not violate the city ordinance and run at a speed over 20 miles per hour." By this instruction the jurors were told in effect that plaintiff was justified in turning her back toward the approaching car, which in broad daylight she plainly saw, and in placing

her trust in the theory that if the law was not violated the car would not overtake her before she advanced around the end of the other car on the northerly track. This is not the law in California. A pedestrian about to cross a street in front of an approaching car has no right to omit any of the precautions which the law demands, nor to rely upon the strict compliance by the servants of the railway company with the speed laws. (*Brown* v. *Pacific Electric R. Co.*, 167 Cal. 204, [138 Pac. 1005]; *Griffin* v. *San Pedro etc. R. Co.*, 170 Cal. 772, [L. R. A. 1916A, 842, 151 Pac. 282]; *Hutson* v. *Southern California R. Co.*, 150 Cal. 701, 703, [89 Pac. 1093].)

The defendant offered in vain an instruction which was in part as follows:

"There is no dispute in this case that plaintiff was aware of the proximity and approach of both of defendant's cars; the question of whether warning was given by gong or otherwise, therefore, becomes immaterial." The jury should have been instructed upon this subject. Where a plaintiff by his own testimony admits that he knew of the approach of the car, the failure of the defendant to sound an alarm has no causal connection with the accident. (*Lambert* v. *Southern Pacific R. Co.*, 146 Cal. 231, 236, [79 Pac. 873].)

After defining the expression "last clear chance" the court instructed the jury as follows: "You are therefore instructed that although you may believe from the evidence that the plaintiff on the occasion in controversy here, by her own negligence, got into a place of danger, yet if you shall further believe that the motorman in charge of defendant's car, going east, discovered the peril of the plaintiff, or saw her in such a position that an ordinarily prudent person would have known that she was in danger of being injured, and that she was a sufficient distance away, that the motorman, after such discovery had an opportunity by the use of ordinary care to have avoided striking the plaintiff, then it was his duty to have done so, and if said motorman failed to use ordinary care under those circumstances, in preventing the accident to the plaintiff, and the plaintiff used ordinary care to have avoided the injury after she had discovered that she was about to be injured, if she did so, then I further instruct you that the failure of the motorman to use ordinary care under these circumstances, was the proximate cause of the injury, and you will

find for the plaintiff damages as defined in these instructions.''

Undoubtedly the first part of the instruction correctly states the law. If the motorman discovered the young woman's peril, and then failed to use ordinary care to prevent the accident, there was room for the application of the doctrine of ''last clear chance.'' But the instruction went further, and told the jury that if the motorman saw Miss Starck in such a position that an ordinarily prudent person would have known that she was in danger of being injured, and that if he then failed to use ordinary care in an effort to avoid injuring her, they should measure the company's liability by the rule of ''last clear chance.'' This part of the instruction is attacked by appellant whose counsel assert that it violates the rule of ''last clear chance'' which is based not upon opportunity by the exercise of common prudence to observe the danger in which another has placed himself but upon actual knowledge of such peril. Undoubtedly that is the general rule and this court has held, again and again, that even where the motorman or engineer has by gross negligence omitted to keep an outlook which might have resulted in his discovery of the plight of a person on or near the track, that fact may not avail the negligent person injured. (*Tucker* v. *United Railroads of San Francisco,* 171 Cal. 702, [154 Pac. 835]; *Bennichsen* v. *Market Street R. Co.,* 149 Cal. 18, 20, [84 Pac. 420]; *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]; *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227, 232, [53 Pac. 651]; *Thompson* v. *Los Angeles etc. R. Co.,* 165 Cal. 748, 754, [134 Pac. 709].) Particular emphasis is laid by appellant upon the authority last cited, the contention being that, in the opinion in that case, the doctrine of the Herbert case was applied to a condition of affairs wherein the person to be charged knew the actual situation of the plaintiff but did not realize the danger. In the Thompson case the instruction, which was condemned because it attempted to apply the ''last clear chance'' doctrine to a defendant who was not actually aware that plaintiff had negligently placed himself in a position of danger, was in part as follows: ''If therefore you should find from the evidence that the motorman of defendant's car which collided with the automobile, saw *or by the exercise of reasonable care and prudence should have seen the situation in which plaintiff was*

*before the collision*, and had the opportunity, by the exercise of proper care to avoid the collision and avoid injuring the plaintiff and failed to exercise such care or to do what reasonable prudence would dictate he should have done to avoid injuring the plaintiff, the defendant is liable and your verdict must be for the plaintiff.'' This language must be read in view of the facts of that case. So read it does not sustain appellant's attack upon the instruction here under review. In the Thompson case it was not denied that the engineer saw the automobile as it came down the road parallel with the track and turned to go up the incline toward the place where the road crossed the railway. The instruction was framed with the purpose of charging defendant's servant with the duty of anticipating the possible attempt of the driver of the automobile to cross the track in front of the car. Commenting upon it Mr. Justice Sloss, who delivered the opinion of Department One of this court, said: ''This instruction is manifestly erroneous in so far as it attempts to apply the last clear chance doctrine to a defendant who is not actually aware of the fact that plaintiff has put himself in a position of danger.'' That unquestionably is the law, but the instruction in the case at bar presupposes by way of protasis not mere opportunity to see the plaintiff, but the actual discovery of her in a position which would indicate to anyone of ordinarily sound judgment that she was in danger. It differs radically from the instruction reviewed in the Thompson case and is not tainted by the same vice. The rule is that if for any reason the motorman does not see the plaintiff at all, there is no place for the doctrine invoked, but having looked, and having observed the situation of a person, he is bound to use reasonable prudence in analyzing that situation and proper diligence in avoiding peril if any exists.

There was a conflict of testimony upon the question whether the westbound car stopped at Elysian Park Avenue. That car was a special one which carried the persons employed by a certain film company. One of the witnesses was asked if any employees of the corporation lived on Elysian Park Avenue. He answered that one of them, giving her name, did reside there. This was error which doubtless will not be repeated upon a second trial. The court was not interested in knowing whether or not on some occasions there might be a reason for stopping the car at that place. The question in-

volved was whether or not on that particular day and at about the time of the accident such a stop had been made.

The court should have also allowed the question propounded to the motorman:

"When did you first discover that the plaintiff was in danger from your car?" His belief and knowledge were relevant facts and he therefore should have been permitted to declare them. (2 Ency. of Evidence, 259; 8 Ency. of Evidence, 14; *Kyle* v. *Craig*, 125 Cal. 107, 114, [57 Pac. 791].)

After the submission of the case plaintiff filed a memorandum citing *Crabbe* v. *Mammoth Channel Gold Mining Co.*, 168 Cal. 500, 504, [143 Pac. 714], to the effect that appellant might not complain of the instructions upon contributory negligence because that defense was not affirmatively set up in the answer. The respondent is in error. The defense of contributory negligence was pleaded as "a further, separate, and distinct answer and defense," and not merely in denial of the allegations of the complaint. The issue was tendered, we think, sufficiently and in form and the authority cited therefore does not apply.

No other alleged errors require consideration.

The judgment and order are reversed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.