[Civ. No. 3628.   Third Appellate District.—February 13, 1930.]

FLORENCE L. JONES, Appellant, v. PACIFIC GAS
 AND ELECTRIC COMPANY (a Corporation), Re-
 spondent.

Charles L. Gilmore for Appellant.

T. J. Straub, Charles E. Finney, W. H. Hatfield and Leo H. Susman for Respondent.

PLUMMER, J.—Plaintiff instituted this action to recover damages on account of personal injuries sustained when an automobile driven by the defendant Cottrell collided with a power pole belonging to and maintained by the defendant Pacific Gas and Electric Company. The defendant Cottrell suffered default, and upon trial judgment went in favor of the defendant Pacific Gas and Electric Company. From this judgment the plaintiff appeals.

The complaint alleges that on or about the thirteenth day of November, 1926, the plaintiff was riding as a guest in an automobile, in a northeasterly direction, on a certain highway or street in North Sacramento known as "Del Paso Boulevard"; that at said time and place the defendant Cottrell was then and there operating said automobile in a careless and negligent manner; that at the same time the defendant corporation herein, Pacific Gas and Electric Company, was negligently allowing one of its poles to stand wholly within the main traveled portion of the said Del Paso Boulevard and near the intersection of said boulevard with a certain other street known as "Globe Avenue"; that the said defendant corporation negligently failed to have said pole guarded or otherwise marked or illuminated, in a manner sufficient to direct attention of persons using said boulevard, of the presence of said pole. The complaint then alleges that as a proximate result of said operation of said automobile, and the maintenance of said pole, the collision herein referred to occurred, and that as the result of said collision, the plaintiff suffered severe bodily injuries, etc. The defendant corporation, in its answer, denied that it negligently allowed one of its poles to stand within said boulevard; denied that it failed to have said pole guarded or marked or illuminated at said time or place; and alleged that at said time and place it maintained on said pole a lighted lantern with a red glass chimney, and that said lantern was so suspended and lighted as to sufficiently direct

attention of persons using said boulevard of the existence and presence of the pole. In addition to denying the allegations of the plaintiff's complaint, the defendant corporation filed an amended answer in which it set up as an additional defense, ''that said plaintiff was herself guilty of carelessness and negligence in and about the manner in which she conducted herself at the time and place in question; that said plaintiff, before becoming the guest of said defendant William Cottrell, knew that said defendant William Cottrell had been, and was then and there a careless, reckless and negligent driver and operator of motor vehicles, and had been, and was then and there, unfit to drive or operate said automobile, and having such knowledge, said plaintiff then and there carelessly and negligently volunteered and undertook to, and did, ride in said automobile which was then and there driven by said defendant William Cottrell; that said defendant William Cottrell, at the time and place of the accident mentioned in said complaint, and during all of the times on said day that said plaintiff was riding in said automobile so driven and operated by him, did drive and operate said automobile in a careless, negligent and reckless manner; that said plaintiff, while riding in said automobile so driven by said defendant William Cottrell, knew that said defendant William Cottrell was then and there driving, and would then and there continue to drive, said automobile in a careless, reckless and negligent manner, and knew that said defendant William Cottrell was unfit to drive or operate said automobile, and knowing that fact, said plaintiff carelessly and negligently, and voluntarily continued to ride in said automobile, notwithstanding that said plaintiff had many opportunities to refrain from so doing; and that by reason of such carelessness and negligence on her part, said plaintiff proximately contributed to the damages and injuries of which she complains.'' ▮
To this amended answer the plaintiff interposed both a general and special demurrer, and the action of the trial court in overruling such demurrer is alleged as grounds for reversal. Among other things it is contended that such amended answer does not tender the issue of contributory negligence on the part of the plaintiff. While it is true that the amended answer does not set forth any ultimate facts showing that the defendant Cottrell was an unfit person to

drive an automobile, or any ultimate facts showing carelessness, negligence, etc., on the part of the defendant Cottrell, in the control and managing of the automobile in which the plaintiff was riding preceding and at the time of the injury, we do not find that the special demurrer called attention to the fact that the amended answer failed to state any facts upon which it predicated the allegation that the defendant Cottrell was unfit to drive an automobile, and that the plaintiff had knowledge of such facts. On the other hand, if it were to be held that the special demurrer was sufficient, and that it should have been sustained on account of the manner of pleading the unfitness of the defendant Cottrell which we have mentioned, any error of the court in overruling the plaintiff's demurrer thereto furnishes no ground for reversal under section $4\frac{1}{2}$ of article VI of the Constitution. The plaintiff in nowise is shown to have suffered by reason of any lack to point out why defendant Cottrell was unfit to drive an automobile prior to the date of the collision referred to. Certain depositions taken prior to the actual trial of this cause set forth clearly all the facts underlying the allegation that the defendant Cottrell was an unfit person to operate an automobile upon any of the highways in Sacramento County, and the plaintiff was fully advised of the facts upon which the defendant corporation would rely as establishing the plaintiff's contributory negligence. As to the form of pleading of the answer, we find the case of *Griswold* v. *Pacific Electric Co.*, 45 Cal. App. 81 [187 Pac. 65, 68], holding the following sufficient to tender the issue of contributory negligence; the allegation in that case upheld is as follows: "That the plaintiff himself did not exercise ordinary care, caution, or prudence in the premises to avoid said accident, and the resulting injuries, if any, by him sustained, and that said accident and the resulting injuries, if any, complained of were directly and proximately contributed to and caused by the fault, carelessness, and negligence of plaintiff in the premises." It was there held that this allegation was subject to a special demurrer, but as the plaintiff went to trial upon it, no prejudice had been suffered. The answer in the instant case pleads contributory negligence as an additional defense. In the Griswold case it was pleaded as a further, separate and distinct answer and defense. The

Griswold case refers to the case of *Starck* v. *Pacific Elec. Ry. Co.*, 172 Cal. 277 [L. R. A. 1916E, 58, 156 Pac. 51], where the same form of pleading of contributory negligence was approved. This case relies upon the case of *Crabbe* v. *Mammoth Channel Gold Min. Co.*, 168 Cal. 500 [143 Pac. 714]. A consideration of these cases leads to the conclusion that the defense of contributory negligence on the part of the plaintiff was tendered as an issue, and further, that if not sufficiently pleaded, the cause was tried upon the theory of the contributory negligence of the plaintiff, and that under the constitutional provision which we have cited, no sufficient error is shown in relation to the pleadings to justify a reversal. The transcript discloses, among other things, the following facts: That prior to September, 1926, the state highway commission financed the paving of a thirty-foot strip along the center of Del Paso Boulevard; that prior to the work just referred to, an old pavement had existed on said boulevard along the center thereof, which was from eighteen to twenty feet in width; that the pole referred to in this action was situate southeasterly of the southerly edge of the old highway pavement, and about eight feet therefrom; that when the pavement just referred to was finished, a strip of approximately twenty-one feet in width was paved continuously along the right-hand side of said boulevard for a distance of about one and one-quarter mile, and upon the completion thereof the opposite side was likewise paved, giving a width of the paved portion of the boulevard of seventy-two feet; that prior to the work referred to there was a fence along the property line of the southerly side of said boulevard; that the distance from the property line fence to the center of the pole referred to herein was thirty-seven feet, and from the south curb to the center of the pole the distance was twenty-five feet. It thus appears that at the time of the accident there was a considerable portion of the paved part of Del Paso Boulevard to the right of the pole in question, as well as to the left, and that the right-hand portion was of sufficient width for one to safely drive an automobile when traveling in a northeasterly direction. It further appears from the transcript, beyond any reasonable question, that at the time of the injury complained of a lighted lantern with a red globe was suspended in such a manner, upon the pole referred to, as

to give notice to anyone approaching from the south, of the existence of the obstruction. As to the actions and movements of the plaintiff on the nights of November 13th and 14th, we find the following: That the defendant William Cottrell and his wife and a man called Basil Filipino attended the first show of the Hippodrome Theatre on the evening of November 13th. After the show was over the three persons just mentioned went down to where the automobile used during the time involved herein, and driven by the defendant Cottrell, and waited for Florence Jones and her husband to come to where the car was parked. Thereupon, all of the party got into the automobile and drove to the residence of Mr. and Mrs. Jones in North Sacramento, where they had a few drinks of what one of the witnesses called "Moonshine" or "Jackass Brandy"; that all five of the party went into the house. The witness Filipino testified that he had four or five drinks, and that others of the party did, also. After this all of the party went down to a place called the "All-Night Grocery," and had something to eat. Following this the party repaired to a place on Second and S Streets, in the city of Sacramento, described as a "bootlegging joint"; that the party all went into the bootlegging joint and bought and drank some more liquor; that they all drank at the "joint"; that they were all together, buying drinks like that, each one buying his share; after this the party started for the Jones residence in North Sacramento. This witness could not give any account of how Mr. Cottrell drove on the way home; he does state, however, that Mr. Cottrell was drinking in the bootleg joint; that Mr. Jones was also drinking; that after leaving the bootleg joint, he, the witness, was intoxicated, and in his own language "went out." It further appears from the transcript that all of the party knew of the existence of the pole heretofore referred to. The transcript also shows that the plaintiff in this action was also drinking with the others of the party; and further shows that the plaintiff knew of the drinking to which we have referred. It appears from the transcript that the social party continued from the time of leaving the Hippodrome Theatre between 9 and 9:30 P. M. until about 1 o'clock A. M. The plaintiff testified, in relation to the intoxication of the defendant Cottrell, the driver of the automobile, as follows: "Mr. Cottrell was not intoxicated to my

knowledge that night. In my deposition I testified that he had had other accidents, and that he was in a slightly intoxicated condition; I don't remember back there, but I remember now, he was not in an intoxicated condition, not incapable of handling the machine, or anything of that kind. I thought, of course, he had been drinking; he had a couple of drinks of what is commonly called 'Jackass Brandy'; I had one. I said nothing to him about his driving; I don't know that Mr. Cottrell had any further drinks at that place where we stopped in Sacramento, that night before we started home. I testified, at the time my deposition was taken, that it was my understanding that they went there for the purpose of getting a drink; that was my impression, that they went in there to drink. I knew of the existence of the poles; I had passed them twice a day most of the time for several years; I didn't look at the poles, but I knew I was in their vicinity, and said nothing to Mr. Cottrell about the poles. I did not attempt at any time to get out of the car, nor ask Mr. Cottrell to stop." This witness further testified, as to Cottrell driving: "He did not necessarily drive negligently as to speed that night; he does drive kind of fast, particularly with those poles there, he was driving fast that night; I know they like to ride fast; I did not care; I like to go slow." Upon cross-examination the witness (plaintiff) testified as follows, referring to Cottrell: "Well, I knew he had taken one drink; I knew that he had taken more than one drink at the time." Plaintiff further testified: "In my deposition I stated I knew he occasionally drove when he was drinking; it was a frequent occurrence for him to drink. I don't know as he drove often when drinking. I knew he had been drinking that night. All the other party had a little drink; none were what I would say intoxicated. Mr. Cottrell was feeling good, but I would not say he was intoxicated." The transcript further shows that the bootleg joint to which the party repaired was apparently conducted by a friend of plaintiff's husband. While at this bootleg joint the party engaged in dancing, singing and drinking. The defendant Cottrell states that all of the party engaged in drinking at the bootleg joint. The plaintiff testified that she did not drink there. The husband of the plaintiff, who accompanied the party and participated in the drinking, would not

say that Cottrell was either drunk or sober. On the way from the bootleg joint on Second and S Streets, in the city of Sacramento, to the home of the Joneses in North Sacramento, the plaintiff occupied the front seat of the automobile with the defendant Cottrell. According to the testimony, the machine was driven at a speed of from thirty to thirty-five miles per hour, and on the way home, the defendant Cottrell, it appears, swerved the machine a few times in close proximity to the curbing of the streets on which he was driving. It further appears from the testimony that the defendant Cottrell, as well as other members of the party, saw the red light on the power pole and attempted to swerve the machine so as to escape the collision. The light on the power pole was observed, according to the testimony, while the machine was at a distance therefrom of a half block or more. The defendant Cottrell testified that he was confused by lights of other machines approaching on the boulevard, just preceding the accident. Other members of the party testified that there were no approaching machines. From what the testimony shows as to the carousing of the party, the jury was warranted in drawing the inference that the defendant Cottrell was seeing lights where there were none. It appears also from the transcript that there was considerable arguing as to the manner of Cottrell's driving of the machine. The plaintiff herself testified that the defendant Cottrell made one of his daring attempts in the vicinity of the pole, referring to a swerving of the machine and just before the accident said to the plaintiff that she was the only one in the car that had any sense. The scene of the accident was in a restricted zone, where the speed of automobiles was limited to twenty miles an hour. The testimony is conflicting as to who was the owner of the machine. The husband of the plaintiff originally bought the machine, and testified that he had sold his interest therein to the defendant Cottrell for the sum of twenty-five dollars. On the other hand, the defendant Cottrell states that the automobile belonged to the husband of the plaintiff. There is other evidence in the transcript concerning the actions of the party on the night in question, and of the condition of the participants after the collision, but what we have set forth is amply sufficient to justify the jury in coming to the conclusion that all of the men, at least, were under the

influence of the intoxicating liquor which they had imbibed both at the home of the plaintiff and her husband, and also at the bootleg joint.

The defendant Pacific Gas and Electric Company, in support of its contention that it was guilty of no negligence in maintaining its power poles, and especially the pole with which the collision occurred, in the place where said pole was then standing, introduced an ordinance granting a franchise to erect power poles along what was then called the "Old Auburn and Sacramento Roads," this franchise having been granted long prior to the incorporation of North Sacramento. A reading of this ordinance, however, does not indicate that the pole in controversy was where the defendant Pacific Gas and Electric Company had a right to place it, or where its grantors had a right to place it. Section 3 of the ordinance reads: "The poles for the support of said wires shall be of height and strength sufficient to forestall interference with the public safety, convenience and comfort, and so located at the side of the highway as not to disturb travel, and such poles shall be erected under the supervision of the Board of Supervisors of Sacramento County." So far as the transcript shows anything in relation to the original location of the poles, it appears that they were not located at the side of the highway, but were located, as shown by the testimony hereinbefore referred to, a number of feet therefrom, and the transcript, so far as it shows anything in relation thereto, shows that the poles were maintained for a considerable period of time, in a situation on the improved highway so as to constitute an obstruction to the free use of Del Paso Boulevard. It appears that the Electric Company offered as a reason for not having removed the poles from the boulevard, that there was some delay in determining just where the poles should be located and the grant of a privilege to locate the poles elsewhere. It is evident, however, from the width of the street and the length of time required to pave the same for the distance mentioned in the testimony, and the time that elapsed after the completion of the improvement, that prompt action was not taken to remove the obstruction from the boulevard. There is some testimony to the effect that at the time the poles were erected the highway was not suitable for travel in the

vicinity thereof, but there is also testimony in the record to the effect that for a considerable period the highway in the vicinity of the poles could be used, though it was a little rough. If testimony had been introduced to the effect that the poles were erected along the side of the highway, then and in that case the law relating to obstructions on the highway under license would apply, but as the testimony set forth in the transcript is only to the effect that the poles were erected under the franchise, and not where the franchise directed that they should be erected, it is unnecessary to consider the various cases relied upon by respondents to justify the maintenance of the poles within the improved portion of the boulevard. This lack of showing that the pole in question was lawfully maintained in the situation where it stood at the time of the collision does not dispose of the case. Nor do we need to consider whether the defendant Pacific Gas and Electric Company had taken adequate means to warn automobile drivers of the then existence of the pole, as the defendant Cottrell, the plaintiff and the other persons composing the party, save Filipino, saw the red light and knew of the location and presence of the pole, and for the further reason that there is another element entering into this case which we think decisive. Section 112 of the California Motor Vehicle Act, in force at the time of the collision, is as follows: "No person who is under the influence of intoxicating liquor, or who is an habitual user of narcotic drugs, shall drive a vehicle upon any public highway within this State." This portion of the section is continued in force in the California Vehicle Act of 1929. [Stats. 1929, p. 537.] It will be observed that the prohibition of the section applies even though the operator of the machine is not in the condition which in common parlance is called "drunk."

In the case of *Jensen* v. *Chicago etc. Ry. Co.*, 133 Wash. 208 [233 Pac. 635], an instruction to the effect that if the driver of an automobile was, at the time of the accident, or immediately before, under the influence of intoxicating liquor, to such an extent as to dull his sense of sight and to prevent, or tend to prevent him from exercising the care and caution which a sober and prudent man would have exercised under the circumstances, and that Jensen (riding with the driver as a guest) knew, or should have known,

of the driver's condition, and thereafter continued to ride with him, this would constitute negligence on Jensen's part, was approved. Thus, it is shown that the statute applies if the intoxication is to such a degree as to prevent, or tend to prevent, the driver of an automobile from exercising his normal faculties, and driving with the care and caution characteristic of a sober and prudent person. The facts related in the case to which we have referred are much less certain in demonstrating the fact of the driver of the automobile being under the influence of intoxicating liquor than appears in the instant case.

In *Schwartz* v. *Johnson,* 152 Tenn. 586 [47 A. L. R. 323, 280 S. W. 32], the Supreme Court of Tennessee, in passing upon the right of one to recover who voluntarily rides with an intoxicated driver, used the following language: "When one gets into an automobile which is to be operated by a drunken driver through the traffic of a populous city, such person takes his life in his hands. All the authorities are to the effect that such contributory negligence prevents a recovery by one taking such a chance, if he is injured as a result of the driver's negligence." (Citing *Lynn* v. *Goodwin,* 170 Cal. 112 [L. R. A. 1915E, 588, 148 Pac. 927]; *Jensen* v. *Chicago etc. Ry. Co., supra; Winston's Admr.* v. *City of Henderson,* 179 Ky. 220 [L. R. A. 1918C, 646, 200 S. W. 330]; *Kirmse* v. *Chicago etc. Co.,* 73 Ind. App. 537 [127 N. E. 837]; *Cunningham* v. *Erie Ry. Co.,* 137 App. Div. 506 [121 N. Y. Supp. 706].) In *Lynn* v. *Goodwin, supra,* cited in the Schwartz case, the following language is used: "While it is true that in general the negligence of a driver of a vehicle is not imputable to a passenger so as to bar that passenger's right of recovery" (citing cases) "yet the conduct of the plaintiff in riding, and in continuing to ride in an automobile when he must have known that the driver was intoxicated, establishes negligence independent of the driver's negligence, barring the right of recovery." (Citing a number of cases.) ▉ In the instant case the plaintiff had every reason to know, and we think it is conclusively shown that she did know that the defendant Cottrell was under the influence of intoxicating liquor at all times while driving the automobile after leaving the home of the plaintiff in North Sacramento. The plaintiff's own testimony shows that the party repaired to

the home of the plaintiff and her husband for the purpose of drinking "moonshine" or "jackass brandy," and that after the supply at this home was exhausted, the party went to a bootlegging joint situate several miles distant, for the purpose of securing additional drinks. Under such circumstances the cases which we have cited prohibit recovery on the part of the plaintiff, irrespective of whether the Pacific Gas and Electric Company had or did not have a legal right to maintain its power pole in the position that it occupied on the night of November 13 and morning of November 14, 1926. The testimony shows that the party involved in this proceeding knew of the existence of the pole, and saw the warning light, but notwithstanding this knowledge, the driver was apparently too drunk, and we might add that most of the party was too drunk to know where to drive to avoid the collision. Under the section of the Vehicle Act, the party had no right upon the highway; the party was violating the law, and as said in one of the cases, "they were taking their lives in their own hands."

Some complaint is made as to the instructions given and instructions refused, but a consideration of the instructions given by the court as a whole leads us to the conclusion that the jury was not misled in any particular to the prejudice of the plaintiff. On the subject of intoxication, the court instructed the jury substantially in form and effect as approved in the case of *Jensen* v. *Chicago etc. Ry. Co., supra.*

Where one voluntarily participates in midnight festivities leading to the drunken condition of an automobile driver, the law does not permit such an one to shut his eyes to the hazards of riding with the intoxicated driver and in the event of injury following his careless and negligent driving, hold a third party responsible in damages. We think such facts establish contributory negligence barring the right of recovery.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.