[Civ. No. 1512. Fourth Appellate District.—January 15, 1935.]

CAROL HOUSE, a Minor, etc., Appellant, v. VICTOR SCHMELZER et al., Respondents.

Head, Wellington & Jacobs for Appellant.

Forgy, Reinhaus & Forgy and R. M. Crookshank for Respondents.

BARNARD, P. J.—This is an action for damages for injuries received by the plaintiff through the overturning of an automobile driven by the defendant Victor Schmelzer and owned by the defendant H. G. Schmelzer. The accident happened shortly after 2 o'clock on the morning of February 5, 1933, on the grounds of the Santa Ana Country Club while the plaintiff, a girl 18 years of age, was riding as a guest of the defendant Victor Schmelzer. A young man named Leason was also in the car and the three were returning from a dance at Balboa when the car left the highway, proceeded for some 150 feet into the grounds of the Country Club, and overturned. The court found that the defendant driver was intoxicated and also found that the plaintiff was guilty of contributory negligence in that the place from which they started was in a business district or well-populated place and that the plaintiff either knew or should have known that the driver of the car was intoxicated. From a judgment in favor of the defendants the plaintiff has appealed.

The only point raised on this appeal is that the evidence is not sufficient to sustain the finding of contributory negligence on the part of the appellant. This argument is largely based upon the testimony of the appellant and of the third occupant of the car to the effect that they observed nothing "peculiar" or "unusual" about the conduct of the driver of the car at any time prior to the time of the accident.

The appellant testified that between 8 and 9 o'clock on the preceding evening she drank three cocktails in a home in Santa Ana; that in company with a young man and another girl she left Santa Ana about 9 or 9:30 and arrived at Balboa at about 10 o'clock; that they went to a dance there at a place known as The Rendezvous; that later in the evening she was unable to find the young man who took her there; that about 1:15 she met Victor Schmelzer and Leason and asked them to take her home; that shortly

after that time the three went to a place in Newport known as the Green Dragon, where each drank coca-cola mixed with alcohol; that they then went back to the dance in Balboa; and that when the dance closed about 2 o'clock they started for home. With reference to the ride up to the time of the accident, she testified that she was "kind of half asleep" and that "at intervals I knew we were on the main highway"; that at Costa Mesa, which is some three or four miles from Balboa, they turned off about two blocks from the main part of town and went toward the Country Club; that at a point some three-quarters of a mile before they reached the place where the accident occurred, Leason was sick and left the car and they remained stopped for about ten minutes; that she knew Leason was sick but did not pay any attention to him; that when they started on she kind of dozed off again; that immediately before the accident "I was rather half asleep and I woke up and trees were just coming towards me"; and that she remembered nothing further.

Leason testified that he and Victor Schmelzer left Anaheim about 10 o'clock that evening after buying a half pint of alcohol; that they arrived at Balboa at about 11 o'clock; that after dancing two or three times, and about 11:30, they went to the Green Dragon, in Newport, where they each drank a coca-cola mixed with alcohol; that they met the appellant at The Rendezvous about 1 o'clock; that shortly thereafter the three went to the Green Dragon, where each drank another coca-cola mixed with alcohol; that the appellant then asked for more alcohol in her drink but the witness did not give her any more because "I didn't think she needed it"; that at that time "She was feeling all right. She was perfectly happy"; that Victor was not in his sight all of the time they were at the dance; that they left the dance about 2 o'clock and started for Newport but he could not remember whether they got there or not; that he could remember nothing thereafter until he became conscious eight days after the accident; that he did not feel intoxicated at any time on this evening; and that he saw nothing unusual about Victor.

Victor Schmelzer testified that he and Leason bought some alcohol and left Anaheim about 10 o'clock, arriving at Balboa about 11; that a little later the two went to the Green

Dragon and each drank a coca-cola mixed with alcohol; that he did not know how much alcohol was placed in the drink; that they went back to The Rendezvous and danced; that about 1 o'clock they went with the appellant to the Green Dragon, where all three had a drink of coca-cola mixed with alcohol; that at that time the appellant said: "Make it a little stronger," and that he replied: "No, that is strong enough"; that at that time about half of the alcohol was gone; that they went back to the dance and started home about 2 o'clock; that they went through Newport; and that he was driving along and did not know he had left the road until the car turned upside down. When asked if at any time he felt shaky in his legs he replied: "Well, I felt the liquor that I drank." When asked if he was unsteady he replied: "Well, my vision was clear. I was able to do what I was doing anyway." He then testified as follows:

"Q. Were you intoxicated any time that evening at all? A. Well, I was under the influence of liquor. Q. When was that? A. Well, at the time I had it, the two drinks, I felt the first one that I had taken and I felt the second one a little bit more and it made me feel pretty good. Q. How did it make you feel? A. Well, it is just the sensation there you are feeling happy or something. Q. Did you have any other sensation besides feeling happy? A. Well, I couldn't say. That rounds it up generally. I was feeling happy and as to whether I was unsteady in walking, I never walk steady—I always walk kind of wobbling."

A witness who lived near the scene of the accident testified that his wife awakened him around 2:15 that morning and called his attention to voices; that shortly thereafter Victor Schmelzer came to his house and asked for help; that he was unsteady in his gait; that he leaned against the door and the wall; that as soon as he entered the room a very strong odor of liquor permeated the whole house; that the odor was so strong that the witness opened the door; and that in his opinion the man was intoxicated. He further testified that, after sending for an ambulance, he went to the scene of the accident and that there Victor kept saying: "Oh, speak to me, buddy," and "This cures me," and that he kept this up continually until the ambulance arrived some thirty or forty minutes later.

The doctor who treated Victor at the hospital shortly after the accident testified that he smelled liquor on his breath; that he made an examination of him; that his pulse and respiration were increased from normal; that his pupils were dilated and would not react to a light flashed in his eyes; that his skin was cold and clammy; and that he was in a sort of a semi-comatose condition. He further testified that from his examination he would say that Victor was intoxicated.

The finding that the driver of the car was intoxicated is fully sustained by the evidence and the only question is whether his condition was or should have been known to the appellant. While she testified that she did not observe anything peculiar about either of the boys at any time, the question of her negligence, or whether or not she should have known the condition of the driver of the car, does not depend entirely upon what she says she observed but is governed by what would have been seen and known by a reasonable person. The driver of the car admitted that he was under the influence of liquor. He testified that he drove at a speed of from 40 to 45 miles an hour, and the accident happened within approximately five miles of their starting point. The evidence as to his condition a few minutes after the trip began justifies the inference that his condition when they started must have been apparent to any reasonable person, and his own testimony tends to support the same conclusion. The appellant failed to observe an obvious fact and we may charitably refrain from drawing any inference as to the probable reason for such failure.

The question before the trial court was one of fact and it may not be said that the finding complained of is without support under the circumstances shown by the evidence with the reasonable inferences therefrom.

 While an innocent person is entitled to protection from intoxicated drivers and to redress for injuries caused by them, one who accepts a ride under circumstances which should be a sufficient warning to any reasonable person that the driver is not in a fit condition to operate his car has no just cause for complaint when the law leaves him where he finds himself. In *Jones* v. *Pacific Gas & Electric Co.,* 104 Cal. App. 47 [285 Pac. 709], the court said:

"Where one voluntarily participates in midnight festivities leading to the drunken condition of an automobile driver,

the law does not permit such an one to shut his eyes to the hazards of riding with the intoxicated driver and in the event of injury following his careless and negligent driving, hold a third party responsible in damages. We think such facts establish contributory negligence barring the right of recovery.''

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.