[Civ. No. 11053.   First Appellate District, Division One.—April 30, 1940.]

ELENA McMAHON, Respondent, v. BERNARD SCHINDLER et al., Appellants.

Cooley, Crowley & Supple and Leighton M. Bledsoe for Appellants.

J. Francis Shirley for Respondent.

KNIGHT, J.—An automobile owned by Fred Cinquini and driven by Bernard Schindler, in which Elena McMahon, aged 22, Lena Ricci, aged 21, and Cinquini were riding, crashed head on into a telephone pole, demolishing the car and injuring the four occupants. The injuries suffered by Elena McMahon were most severe, among them being a compound, comminuted fracture of the tibia, the bone protruding through the flesh about an inch and a half, and a piece of flesh about three inches long being torn from the leg exposing the bone below the knee; severe back injuries, including three broken vertebrae; and an almost complete laceration of the tongue, it being severed through from left to right, about mid-portion, leaving only a small fragment holding the severed portion. On account of said injuries she brought this action for damages against the owner and the driver of the automobile, and was awarded a verdict for $3,500. From the judgment entered thereon the defendants appeal.

The action was based on section 403 of the Vehicle Code which permits a person receiving injuries while riding as a guest in an automobile to recover damages when it is established that such injuries "proximately resulted from the intoxication or wilful misconduct of the driver". The complaint contained three counts. In the first it was alleged that the accident was proximately caused by the intoxication of Schindler, and in the second he was charged with wilful misconduct; the third charged Cinquini with having invited respondent to ride as a guest in his automobile and having negligently permitted Schindler to drive the same while in-

toxicated. The jury returned a general verdict and, therefore, under the rule of the following cases, the judgment entered thereon must be affirmed if it finds legal support in the causes of action based on charges of intoxication (*Sessions* v. *Pacific Imp. Co.*, 57 Cal. App. 1 [206 Pac. 653]; *King* v. *Schumacher*, 32 Cal. App. (2d) 172 [89 Pac. (2d) 466]) regardless of whether any error was committed in dealing with the cause of action charging wilful misconduct. (*Hume* v. *Fresno Irr. Dist.*, 21 Cal. App. (2d) 348 [69 Pac. (2d) 483].)

Appellants in their answer to the complaint denied that Schindler was intoxicated; and at the trial he . testified he was not intoxicated; but on this appeal appellants concede that "the evidence fully supports the inference that the defendant Schindler was driving the car while intoxicated". They contend, however, that respondent was guilty of contributory negligence, as a matter of law, and therefore that she is barred from recovering damages.

The principal facts of the case may be summarized as follows: Respondent and Lena Ricci were employed as hostesses and entertainers in a night club in Colma, known as the Colma Cafe. Some time after 12 o'clock on the night of the accident, appellants and two male companions visited the cafe. The closing time was 2 o'clock; and usually respondent, who lived seven or eight blocks away, was driven home by her employer. But on this occasion, at closing time, Cinquini asked respondent if she and Lena Ricci wanted to go with them. Respondent had known Cinquini for several months, and Schindler for about a week; and the young women accepted Cinquini's invitation. Cinquini operated a tavern in South San Francisco, and he first drove over there. One of the men left the party before reaching the tavern, and the others stayed at the tavern for about half an hour; and while there Cinquini served each with two "picon punches". Then at Schindler's suggestion, Cinquini, the two young women and Schindler started to drive to North Beach to get some steamed clams, Schindler doing the driving; but on the way they stopped for a half or three-quarters of an hour at a night club in Colma called Bocci Ball, where respondent had been formerly employed as hostess. At Cinquini's request, Schindler had driven the car from the tavern to Bocci Ball, and upon leaving there Schindler again took

the wheel, respondent occupying the seat beside him. After proceeding some considerable distance at a moderate speed northward toward North Beach, Schindler increased the speed to about forty-five miles an hour. Respondent protested; and while passing through Daly City he slowed down to twenty or twenty-five miles an hour. Soon afterwards, however, he again increased the speed to fifty or fifty-five miles an hour and the car swerved; he also drove through stop signs without slowing down. Respondent again protested, and asked him not to drive so fast; but he laughed at her. She then observed that his eyes "were shining" and, realizing that he must be intoxicated, she told him to stop the car—that he was drunk; but he again laughed at her. She immediately turned around toward the back seat to ask Cinquini to do something about it, and, as she was doing so, the car crashed into the pole. At the trial the explanation offered by Schindler as to the cause of the accident was that it happened while he was trying to wipe the windshield; but to a police officer at the scene of the accident he stated he had fallen asleep at the wheel; and the explanation made by him to the two young women was that he saw something white on the highway and that he swerved the car to avoid striking the object.

The testimony relating to the number of intoxicating drinks taken by Schindler is conflicting. He testified that throughout the night he had but five; one of beer before arriving at the Colma Cafe, one of beer at the Colma Cafe, two "picon punches" at the tavern, and at Bocci Ball one "coffee royal", consisting of a jigger of whiskey in a cup of hot coffee. Respondent testified that during his visit to the Colma Cafe he drank four or five hot "whiskey toddies"; and that while visiting Bocci Ball she saw him at the bar drinking a hot "toddy", but whether he drank more than one, and if so, how many more, she did not know. She further testified that the only intoxicating drink she had taken that night besides the two "picon punches" at the tavern was a "whiskey toddy" at the Bocci Ball.

■ It is doubtless the law, as appellants contend, that where a plaintiff accepts a ride under circumstances which would lead a reasonable person to believe that the driver is intoxicated, and he is injured as a result of the intoxicated driver's negligence in operating the car, he is guilty of con-

tributory negligence and may not recover damages on account of the injuries so received. ■ But it has been definitely held that such a case presents no exception to the general rule that contributory negligence is ordinarily a question of fact to be determined by the triers of the facts; that it becomes a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference pointing unerringly to the negligence of the plaintiff contributing to the injury. (*Haight* v. *White,* 16 Cal. App. (2d) 426 [60 Pac. (2d) 548]; *Lindemann* v. *San Joaquin Cotton Oil Co.,* 5 Cal. (2d) 480 [55 Pac. (2d) 870]; citing *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529]:) In other words, as said in *Lindemann* v. *San Joaquin Cotton Oil Co., supra,* which is considered a leading case of this type, where the minds of reasonable men might differ, the burden rests upon the jury to determine the disputed questions of fact as to intoxication and contributory negligence, and the province of an appellate court is only to find whether or not there is sufficient evidence in the record to support the finding of the jury. And in the Lindemann case the court goes on to hold that evidence which tends to establish the intoxication of a driver to the degree which would render him liable for the injuries and damages suffered by his guest by reason of an accident is not conclusive of the question as to whether the guest had or should have had knowledge that the driver was so far affected by intoxicating liquor as to defeat his claim. If the rule were otherwise, says the court, then every person riding as a guest would be defeated by proof of the single fact that the driver was not in a fit condition to drive the automobile. Therefore, continues the court, the question upon which liability depends is whether the plaintiff knew or should have known that the driver was in a fit condition to drive his car on the occasion of the accident; and that question, says the court, is for the jury's determination, and, unless the plaintiff's conduct is so far contrary to the rules which govern the conduct of reasonable men in the ordinary affairs of life, or violates some rule of law, the jury's verdict and the trial court's judgment are not subject to annulment by an appellate court. Furthermore, and in this connection, the court there says: "Judgments formed upon what apparently appears to be the true relation of things often prove to have been

erroneously formed. If, however, the circumstances were such as to justify a reasonable man in acting upon them, he will not be deprived of a remedy which the law provides if it afterward is proven that his judgment was fallaciously formed.''

█ Here respondent testified that on leaving Bocci Ball, and before entering the car, she looked at Schindler and that to her "he looked perfectly all right"; that she had seen him at the Colma Cafe every night during that week, had seen him drink, and had never seen him become intoxicated. She further stated that there was no cause for complaint about the manner in which he drove the car from the tavern to Bocci Ball. Moreover, Schindler himself testified at the trial that when they left Bocci Ball he was in a fit condition to drive, that he "did not feel" that he was intoxicated. And apparently Lena Ricci saw no reason to suspect his condition until after they had traveled a considerable distance and she heard respondent protesting the way the car was being driven. She then asked Cinquini if Schindler was all right and he assured her twice that he was. Appellants call attention to respondent's testimony wherein she stated that when they came out of Bocci Ball and saw Schindler take the driver's seat, she asked Cinquini if he were not going to drive, and that he replied that something told him he should. However, the testimony further shows that Cinquini at no time made any effort to do so; and, as stated, a little later he assured Lena Ricci that Schindler was all right; furthermore, at the trial he testified that he saw nothing in the manner in which Schindler drove the car to cause any alarm, and that at no time did he make any protest against Schindler's driving.

In view of the foregoing testimony, there is no legal ground upon which it may be held that the finding of the jury on the issue of contributory negligence, and the conclusion reached thereon by the trial court in passing upon the motion for a new trial are wholly wanting in evidentiary support. (*Tomlinson* v. *Kiramidjian*, 133 Cal. App. 418 [24 Pac. (2d) 559] ; *Haight* v. *White, supra*.)

Appellants argue that the facts of the Lindemann case are different from those of the present case; and, hence, that the law declared therein is not here .applicable; and in support of their contention that respondent was guilty of con-

tributory negligence as a matter of law they rely mainly on the cases of *Schneider* v. *Brecht,* 6 Cal. App. (2d) 379 [44 Pac. (2d) 662], *House* v. *Schmelzer,* 3 Cal. App. (2d) 601 [40 Pac. (2d) 577], *Reposa* v. *Pearce,* 11 Cal. App. (2d) 517 [54 Pac. (2d) 475], and *Price* v. *Schroeder,* 35 Cal. App. (2d) 700 [96 Pac. (2d) 949]. Regarding the Lindemann case it may be conceded that the nature of the evidence was quite different from that here presented; but the issue of fact submitted to the jury for determination, and the issue of law the reviewing court was called upon to decide, were exactly the same as those here involved; moreover, the verdict of the jury there, as here, was in favor of the plaintiff; therefore, the legal doctrines there declared have peculiar application to the present case.

With respect to the cases relied upon by appellants, it would appear that they are more of the type of the one we now have before us, it being claimed therein that the guest ''was a participant in a drunken orgy in all the acts and events which led up to the intoxicated condition'' of the driver of the automobile. Obviously, however, the decisions in those cases are not here controlling for the following reasons: In each of them, the jury or the judge before whom the case was tried found as a matter of fact that such claim was well-founded; in other words, the verdict was against the plaintiff, and the reviewing court, recognizing that the issue was one of pure fact for the determination of the jury or the trial judge, simply refused to disturb the finding. While here, as in the Lindeman case, the jury found that the claim made against the plaintiff was not well-founded; and the trial judge in denying the motion for a new trial approved the jury's finding; therefore, since there is evidence to support the finding, it is beyond the power of this court to interfere therewith on appeal.

On the other hand, numerous cases may be cited wherein it was held that the question of whether a guest knew or should have known that the driver was under the influence of liquor was one of fact for the jury, and not one of law for the courts. Particular attention may be called to *Haight* v. *White, supra,* and *Tomlinson* v. *Kiramidjian, supra,* in each of which a judgment in favor of the defendant notwithstanding the verdict, after the jury had returned a verdict in favor of plaintiff, was reversed on the ground that the question

of the guest's contributory negligence was one of fact for the jury; also, *Erickson* v. *Vogt,* 27 Cal. App. (2d) 77 [80 Pac. (2d) 533], wherein a judgment in defendant's favor following a directed verdict was reversed, one of the grounds of reversal being that the jury should have been allowed to pass upon the question of whether the plaintiff was guilty of contributory negligence, where the evidence showed that she had been drinking with the defendant. Even in *House* v. *Schmelzer, supra,* cited in support of appellants' contention, it was held that "the question before the trial court (contributory negligence) was one of fact".

Applying the above rules to the facts here·presented, we conclude that the question of respondent's contributory negligence was one of fact for the jury's determination, and that its implied finding in her favor on that issue is sufficiently supported by the evidence, and cannot be disturbed on appeal.

■ Nor does the fact that respondent took three intoxicating drinks while in the company of appellants in itself deprive her of the right to recover damages under the provisions of said section 403 of the Vehicle Code. To quote again from the Lindemann case, *supra*: "No prejudice by reason of the fact that either or both of the parties involved in the accident had partaken of intoxicants should cause a court, where a legal right is involved, to consider lightly the rights of said parties, even though their unhappy plight may have been brought about by conduct which may appear to be highly censurable."

The remaining points urged in support of the appeal all relate to the cause of action based on wilful misconduct; but since the judgment is sustainable on the issue of intoxication, it becomes unnecessary to inquire into the points directed against the issue of wilful misconduct.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 29, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 27, 1940. Edmonds, J., voted for a hearing.