[Civ. No. 12467.   First Dist., Div. Two.   Dec. 15, 1943.]

EDYTHE PENNIX, Appellant, v. ORON A. WINTON, Respondent.

Maurice C. Ryan for Appellant.

Hoge, Pelton & Gunther and A. Dal Thomson for Respondent.

SPENCE, J.—Plaintiff sued to recover damages for personal injuries sustained while riding as a guest of defendant in defendant's automobile. The complaint was in two counts. It was alleged in both counts that defendant, while operating his automobile in the vicinity of Market and Valencia Streets in San Francisco, collided with a parked car and thereby caused plaintiff's injuries. The first count was based upon the alleged intoxication of defendant. The second count was based upon the alleged wilful misconduct of defendant as follows: "that knowing that he was in a drowsy condition and knowing that he was napping at the wheel he continued to drive said automobile with reckless disregard of the consequences and recklessly and wantonly took a chance with the knowledge that probable serious injury would result to plaintiff from such wilful misconduct." The answer of defendant denied the allegations concerning intoxication and wilful misconduct and affirmatively alleged in general terms that plaintiff had been contributorily negligent. The cause was tried by a jury which deliberated approximately two hours and then, by a vote of nine to three, returned a verdict in favor of defendant. Plaintiff appeals from the judgment entered upon said verdict.

Plaintiff first contends that the trial court erred in denying her motion for a directed verdict. This contention is based upon the claim that all the evidence showed that defendant was intoxicated and that there was no evidence which showed contributory negligence on the part of plaintiff. Assuming, as claimed by plaintiff, that all the evidence showed that defendant was intoxicated, the uncontradicted evidence further showed that plaintiff had been in defendant's company for several hours immediately preceding the accident and that plaintiff knew that defendant had been drinking intoxicating liquor during that time. While this evidence did not necessarily bar plaintiff's recovery, we are of the opinion that the question of whether plaintiff was guilty of contributory negligence in riding with defendant under the circumstances was essentially a question of fact for the determination of the jury. (*Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal.2d 480 [55

P.2d 870]; *Smith* v. *Baker,* 14 Cal.App.2d 10 [57 P.2d 960].)
We therefore find no merit in the contention that the trial
court erred in denying plaintiff's motion for a directed ver-
dict.

Plaintiff further contends that the trial court erred in
eliminating the issue of wilful misconduct from the considera-
tion of the jury. In the instructions, the trial court read to the
jury some of the language found on page 384 of the opinion
in *Schneider* v. *Brecht,* 6 Cal.App.2d 379 [44 P.2d 662]. The
trial court then continued as follows: "In other words, from
the quotation I have just read you out of one of the cases,
wilful misconduct may be eliminated from this case, because
there is no proof of any act done by defendant Winton which
could be regarded as wilful misconduct except such acts as
have been proven which may or may not establish intoxica-
tion. Is that clear? Wilful misconduct, therefore, need not be
regarded by you any further."

Defendant testified that as he drove down Market Street
approaching Valencia Street he "just dozed off" and then
"struck a parked car." He then gave the following answers
to the following questions propounded to him "Q. Mr. Win-
ton, had you noticed this dozing off prior to the collision?
A. I said once before, yes. Q. On the same evening, I
mean? A. Yes. Q. For some distance prior to the time
you hit the car you realized you were dozing a bit? A. Well,
I did doze off once and I kind of shook it off. . . Q. But did
you realize then that there were intervals when your eyes
were closed? A. I did; I would doze off temporarily, just a
flash." Plaintiff testified that shortly before the accident oc-
curred, she asked defendant "if he was sleepy or something
was wrong with him," and he said "No."

In *Erickson* v. *Vogt,* 27 Cal.App.2d 77 [80 P.2d 533], the
trial court directed a verdict for defendant upon somewhat
similar facts. The judgment was reversed and the court said
on page 80, "The first contention, in appellant's behalf, is
that wilful misconduct appears from the circumstance that,
after once having fallen asleep, respondent nevertheless con-
tinued to drive and thereby took the risk of falling asleep
again." The court discussed numerous authorities and dis-
tinguished the cases of *Rode* v. *Roberts,* 11 Cal.App.2d 638
[54 P.2d 498] and *Forsman* v. *Colton,* 136 Cal.App.97 [28
P.2d 429], upon which defendant relies, and then said on
page 82, "In the circumstances we think that the question

whether respondent was or was not guilty of wilful misconduct was in the instant case one of fact for the jury, rather than of law for the court." We therefore conclude that in the present case there was sufficient evidence to sustain a finding of wilful misconduct.

But in justification of the trial court's action defendant cites *Schneider* v. *Brecht*, 6 Cal.App.2d 379 [44 P.2d 662] and claims that "where intoxication is present, the defendant cannot possess the state of mind sufficient to establish wilful misconduct and that the injuries must be attributed solely to intoxication, if recovery is permitted at all." The particular language upon which defendant relies is found on page 384 of the opinion. In the cited case, the appeal was on the judgment roll which contained very full findings. The trial court there found both wilful misconduct and intoxication on the part of the defendant. It further found that "the intoxication of the defendant was the proximate cause of the accident." The trial court denied a recovery to plaintiff however, upon its findings with respect to plaintiff's own conduct including findings of contributory negligence. On appeal, plaintiff relied solely upon the finding of wilful misconduct and made the contention "that the finding of wilful misconduct governs, and that any negligence on the part of the plaintiff cannot be considered as a contributory cause to her injury." In answer to this contention the court said on pages 383 and 384, "While it is true, generally speaking, that ordinary negligence on the part of a plaintiff is not a defense upon which a defendant may rely when the complaint is based upon a charge of wilful misconduct, this overlooks a principle which we think must be considered, to wit: That where the negligence of the plaintiff is of such a character that it contributes to, and becomes a part of, and the inducing cause of defendant's wilful misconduct, no recovery can or should be had." The court pointed out that plaintiff and defendant had been "engaged in a drunken carousal to a considerable extent"; that plaintiff had "participated in the drunken orgy being engaged in by all the parties" and then said on page 387, "The case cited by the appellant to the effect that ordinary negligence constitutes no defense to a charge of wilfulness or wantonness, we think inapplicable where the facts show that the plaintiff was guilty of every act complained of, as against the defendant, and participated

in bringing about the mental condition of the defendant which culminated in the collision.'' It is apparent that the court there deemed the case to be one of ''first impression.'' (P. 388.)

As we read the cited case, there is no holding that a finding of intoxication precludes a finding of wilful misconduct. On the contrary, the court there recognized that the trial court had found that the defendant was chargeable with both intoxication and wilful misconduct, and those findings were permitted to stand. The question before the court there was whether the findings with respect to plaintiff's conduct were sufficient to preclude her recovery notwithstanding the findings of both wilful misconduct and intoxication on the part of the defendant. It was held, and we believe properly held under the facts there presented, that they were. The language used by the court on page 384 of the opinion must be read in the light of the question under discussion in that case. Having in mind the general rule that intoxication is not a defense to a criminal charge (Pen. Code, sec. 22) and believing that it is a matter of common knowledge that many crimes and many acts of wilful misconduct are committed by persons while under the influence of intoxicating liquor, we are of the view that a trial court or jury, in a civil action brought by a guest, might properly find without inconsistency that the injuries to the guest resulted from both the intoxication and the wilful misconduct of the driver. And as the jury might have sustained either or both charges in the present case and as the defenses to said charges differ to some extent, we are of the opinion that the trial court committed prejudicial error in withdrawing the issue of wilful misconduct from the consideration of the jury.

We now turn to a contention of plaintiff which raises a question of first impression and which requires rather extended discussion. The contention is that counsel for defendant was guilty of prejudicial misconduct which prevented plaintiff from having a fair trial on the real issues involved. While several instances of alleged misconduct are cited, the main burden of plaintiff's argument is that counsel for defendant, while purporting to represent defendant, introduced into the case the issue of alleged collusion between plaintiff and defendant; that counsel in reality abandoned the defendant as his client for the avowed purpose of protecting some third party who was not a party to the action; that he at-

tempted to impeach his own client; and that he attacked generally the character and motives of defendant as well as plaintiff. There can be no doubt that all of the claims made by plaintiff with respect to the attitude of counsel for defendant toward defendant are sustained by the record. In passing we may state that it is conceded by all that defendant carried insurance and that counsel for defendant had been employed by the insurance carrier to represent defendant in this action.

Before proceeding with the discussion of plaintiff's contention, it is appropriate to refer briefly to the state of the evidence. Both plaintiff and defendant testified concerning the events preceding the happening of the accident. There was no particular conflict in their testimony and there was no other witness who testified concerning these events. It appears from their testimony that defendant had made an engagement to take plaintiff to dinner and had asked her to meet him at 9:30 p. m. at the Ambassador Bar in the downtown district in San Francisco. Defendant left work that night at 7 p. m. and, unknown to plaintiff, had had three or four alcoholic drinks between 7 p. m. and the time he met plaintiff at 9:30 p. m. After meeting plaintiff, defendant had one alcoholic drink at the Ambassador Bar and then plaintiff and defendant left to go to dinner at the "Chicken Shack," an eating place on the peninsula road beyond the cemetaries. On the trip, defendant stopped at one place and had one or two alcoholic drinks. They then proceeded to the "Chicken Shack," arriving there at about 10:30 p. m., had dinner and left there about 11:30 p. m. There was no bar at that place and defendant had no further alcoholic drinks that night. All alcoholic drinks consumed by defendant consisted of whiskey and coca-cola and he had not eaten between noon-time and the arrival at the "Chicken Shack" at 10:30 p. m. When defendant met plaintiff that evening, she was sober and she drank no alcoholic drinks after meeting defendant. She drank plain coca-cola while defendant drank the alcoholic drinks in her presence and she drank milk with her dinner. Plaintiff testified, however, that she had had two alcoholic drinks, consisting of whiskey and coca-cola, while waiting for defendant at the Ambassador Bar in the company of some friends.

The accident occurred shortly after midnight after defendant had driven back from the "Chicken Shack" to a point

on Market Street near Valencia Street in San Francisco. Plaintiff testified with respect to defendant's sobriety that he "looked perfectly all right" when they left the "Chicken Shack" and that they made no stop on the way back. She further testified regarding the collision with the parked car that "I noticed going down the hill his speed increased slightly, and I asked him if he was sleepy, or something was wrong with him. He said, 'No.' The next thing, it was all over." Plaintiff testified that she did not know defendant's capacity for liquor as he had previously drunk but one drink in her presence on a former occasion. While both plaintiff and defendant testified that plaintiff was sober at all times, she was taken to the emergency hospital because of her injuries and the records of the hospital listed her as "alcoholic." Plaintiff claims that any conduct on her part at the hospital, which may have led to such entry, resulted from the shock and hysteria following her injuries together with her resentment at the failure of those at the emergency hospital to comply with her request to call her own doctor.

Two police officers who arrived at the scene of the accident also testified. Both saw defendant there but did not see plaintiff until later at the hospital. With respect to defendant, one officer testified that defendant was under the influence of intoxicating liquor while the other testified that defendant did not appear "as if he were under the influence of liquor" but that "he showed some signs of alcohol." Defendant told the officers at that time that he had had a couple of beers. With respect to plaintiff, one officer testified that she "seemed to be suffering from shock" but that he did not "notice anything boisterous or unusual about her conduct." The other officer likewise testified that he observed no boisterous conduct on plaintiff's part.

Plaintiff's injuries necessitated her hospitalization for a time and defendant paid a portion of her hospital bills. It appears that while counsel for plaintiff obtained a statement from defendant shortly after the accident and while counsel for defendant also obtained a statement, neither statement was used at the trial for the purpose of attempted impeachment of the defendant as a witness.

At the opening of the trial, counsel for defendant made an opening statement immediately following the opening statement by counsel for plaintiff. He stated therein that "We expect to show—— that—— she was under the influence of li-

quor, and these people went out, they were drinking at the time; she was cooperating with him in the imbibing of liquor, and her conduct superinduced his. And we expect to show that it was simply a joint affair, and that she should have known that under those circumstances that an accident might occur." Counsel indicated, however, in this opening statement that he intended to inject the issue of alleged collusion into the case and to attack defendant by the following language ". . . it is my duty—— as well, I guess I am attorney for the defendant in this case, so I will refer to myself as the attorney for the defendant—— to make a statement to you as to what I expect to prove by way of a defense to this action that has been filed."

Thereafter defendant was called as a witness by plaintiff under section 2055 of the Code of Civil Procedure, but not as a witness for the defense. On cross-examination, counsel for defendant sought to impeach his own client and when objection was made upon the ground that such impeachment was improper, counsel stated "I am in a peculiar position in this case"; and again later he stated "I think we are trying to see that justice is done here. I don't want to make a statement in front of the jury. I think the court can appreciate my predicament." Further when counsel for plaintiff referred to defendant as "your client," or "Mr. Hoge's client," counsel for defendant said, "Thanks again for reminding me" and "Thank you for the reminder again, counsel," and "Thank you for reminding me that he is my client. I thought you were his attorney."

The true position of counsel for defendant was made entirely clear in his argument to the jury. While it is true that he argued that plaintiff had been drinking, the main theme of his argument was an attack upon the character and veracity of both plaintiff and defendant and he urged upon the jury the claim that plaintiff and defendant were in collusion. We quote but a few excerpts from the argument of counsel for defendant. He said "As his lawyer—yes, I have to, I suppose, refer to him technically, ladies and gentlemen, as my client; I had to cross-examine him, my own client. Now he does not have the same desire to tell the same story he told the officers, that he had a couple of beers. Now he has taken one highball after another to get himself good and drunk, you know. During all this time this lady of the even-

ing with him was drinking milk and coca-cola. The idea of trying to foist a thing of that sort upon an unsuspecting public. It is the most ridiculous story you ever heard in your life. . . . Because a person gets up there and testifies to one set of facts, you do not have to believe that testimony. . . . If you do not believe that those witnesses are telling the truth, if from their testimony you believe that that is just being done for the purpose of putting something over on a jury, you do not have to believe that. If you believe these people are in collusion here in order to soak an innocent party, a party who is not a party to this litigation, you can so find by a verdict in this case, by a verdict that will reflect your findings.'' Speaking of the testimony of plaintiff and defendant that they dined at the ''Chicken Shack,'' counsel for defendant said, ''I don't think they were ever out there at all''; and again ''Well, do you think that they were ever down to the so-called Chicken place? Personally, I don't think so.'' And again he said, ''Now, members of the jury, here are two people coming—— of course, they are sitting apart now. Mind you—— well, yes, I guess I will refer to him as my client, ladies and gentlemen; he admitted on the stand in this case that he has been in conversation with her since this accident occurred a few days ago, talked to her on the telephone. In court here they are not having anything to do with each other. Why, they sit apart; they don't talk to each other; they are supposed to be strangers; they are supposed to be enemies. This is for your benefit. You are supposed to fall for this idea, he being a bona fide defendant in a damage suit and she being a bona fide plaintiff. Yes, that is all done, just staged here for you, ladies and gentlemen—— sitting apart, having nothing to do with each other—— when I get an admission out of him that he has talked to her on the telephone within the last several days. He has been friendly with her ever since. Oh, this lurid sort of thing is disgusting.''

Counsel further argued, ''And, ladies and gentlemen of the jury, this is a sham battle. That is what it amounts to. It is a sham battle,—— two people in here trying to give the appearance of an honest to goodness, bona fide dispute, when you know and I know that these people have gotten together, one helping out the other . . . and I think you will bring in a verdict that is going to show these people that they are not going to be permitted to act in collusion with each other and come into court here and do an injustice—— do a grave

injustice to an innocent party that is not a party to this litigation. I can't say any more on that, because I think that you have got them sized up and you know just what the situation is. Ladies and gentlemen of the jury, you bring in a verdict by which you will show them that you are not placing your stamp of approval on conduct of this sort.''

There were frequent assignments of misconduct by counsel for plaintiff but counsel for defendant merely continued on with a different phase of his argument returning in due time to his attack upon the parties, including his own client, and to his claim of collusion.

On this appeal, counsel still purports to represent the defendant but the attack upon defendant continues. The first and main heading in the respondent's brief is directed to the claim that ''the jury was entitled to conclude that the plaintiff and defendant were confederating and cooperating toward the procurement of a judgment by the plaintiff, regardless of the facts.'' Counsel states that defendant's testimony at the trial ''was given solely for the purpose of enabling the plaintiff to recover a judgment which his insurance company would be obligated to pay.'' Counsel speaks of ''defendant's lack of sincerity''; ''his purpose to mislead''; and his realization of the ''falsity'' of his answers. Counsel states that defendant's testimony ''was not uttered in good faith''; that it was ''deliberately false''; that ''defendant joined in plaintiff's fantastic tale''; that he gave an ''unbelievable account of the peregrinations of the evening''; and that his testimony ''was not only not in accord with the facts, but was deliberately uttered in bad faith and for an evil motive.''

We have been at pains to set forth numerous excerpts from the transcript and from respondent's brief in order to show that there is no doubt concerning the attitude of counsel for defendant toward defendant. Both in the trial court and in this court, counsel for defendant has consistently attacked defendant, charging that defendant acted in collusion with plaintiff for the immediate purpose of misleading the trial court and jury and for the ultimate purpose of defrauding defendant's insurance carrier. The charges made against defendant by his own counsel are of a most serious nature involving as they do specific charges that defendant has been guilty of acts constituting perjury, (Pen. Code, sec. 118) and of acts constituting criminal conspiracy. (Pen. Code, sec. 182).

We are not concerned for the moment with the question of the truth or falsity of such charges. Even if it be assumed that the state of the evidence was such that the jury might have inferred that said charges were true, there was ample evidence from which the jury might have found that such charges were false. The first question for determination is whether an attorney, purporting to act as counsel for defendant in a guest case, may continue to act as such counsel while bitterly attacking defendant and while openly charging plaintiff and defendant with collusion involving criminal acts on the part of both without being himself chargeable with misconduct. In our opinion, he may not.

In arriving at this conclusion, we are not so unrealistic as to believe that every so-called guest case is entirely free from the taint of collusion. On the contrary, we believe that there are some such cases which are wholly collusive in nature and that there are many other such cases in which some suspicion of collusion naturally arises. Such suspicion flows from the fact that the guest plaintiff is ordinarily a close friend or perhaps a relative of the defendant driver and therefore a doubt frequently arises as to whether any action would have been brought if there had not been an insurance carrier behind the scenes. But the Legislature has settled the policy of permitting an action by a guest against his host under certain circumstances (Veh. Code, sec. 403) and it cannot be assumed that every such action is a collusive action in the legal sense. In any such action, there are ordinarily but two parties before the court and the trial of the action should be conducted, insofar as possible, without reference to the question of whether the defendant is or is not insured. Parenthetically, we may say that it is a matter of common knowledge that insurance carriers have quite generally made strenuous efforts to keep from juries any knowledge of the existence of insurance in personal injury cases. These efforts have been entirely proper and have resulted in the decisions of the courts which prohibit any reference to insurance in personal injury cases except in those situations in which the interests of justice necessitate and therefore justify some limited reference. But it would seem incongruous for insurance carriers, acting from behind the scenes in personal injury cases, to argue that the reference to insurance should be prohibited in those cases in which such reference would probably be to their ultimate disadvantage and to argue, on the other hand, that the reference to insurance should be permitted

in those cases in which such reference would probably be to their ultimate advantage.

Returning to the precise question presented here, that of alleged misconduct of counsel for defendant, it is conceded that counsel for defendant had been employed by defendant's insurance carrier to represent defendant in this action. Under these circumstances, counsel no doubt felt that he was under the duty to represent the interests of the insurance carrier as well as the interests of defendant. Ordinarily there is no conflict of interests involved in such a situation but that such conflict may arise seems quite obvious from the claims made by counsel in this case. ■■■ In assuming to act as counsel for defendant in this action, counsel assumed toward defendant the high duties imposed by statute (Bus. & Prof. Code, sec. 6068), and by the rules governing professional conduct. (Rules of Professional Conduct, 213 Cal. p. cxiii), and whenever counsel had reason to believe that the discharge of those duties would conflict with the discharge of counsel's duties to the insurance carrier, it became the duty of counsel to take appropriate steps to terminate the relationship. ■■■ In this case, it appears that counsel felt that there was reason so to believe even prior to the commencement of the trial for in his opening statement he used the expression "I guess I am attorney for the defendant in this case, so I will refer to myself as attorney for the defendant." This expression indicated a predetermined intention on the part of counsel to act solely in the interests of the insurance carrier and to attack defendant during the trial. The existence of such predetermined intention was made manfest throughout every stage of the proceedings. We know not whether such belief and such intention were based upon previous confidential communications received by counsel from defendant while acting as defendant's counsel, but that is not decisive. Whatever may have been the basis of such belief and of such intention, counsel could not consistently continue to act as counsel for defendant and to discharge his duties toward defendant as such counsel while entertaining such belief and while carrying out such intention. To hold that counsel could continue to act under such circumstances would be violative of every legal and ethical concept of the attitude which counsel should maintain toward his client. The results of such continuance to act are made clear by the record before us. Having purported to enter the trial of the cause as the trusted

and confidential adviser of defendant, counsel for defendant turned upon his client and, without according to the client the benefit of any warning or the benefit of any true representation by counsel, suddenly changed his real role from that of the defender of defendant upon the charges made by the pleadings to that of the prosecutor of defendant upon charges not embraced within the pleadings and thereafter inflicted upon defendant the proverbial stabs in the back throughout the entire proceedings.

Our conclusions regarding the duties of counsel toward his client are not affected by the fact that the misconduct of counsel toward his client may have resulted in a verdict in favor of his client. We are dealing for the moment solely with the question of whether there was misconduct rather than the question of whether such misconduct was prejudicial to either plaintiff or defendant. In passing, however, we may observe that there are many things in life which are more precious than the pocket book and that many bona fide litigants would prefer to have a judgment entered against them rather than to have a judgment entered in their favor at the expense of being defamed in open court by one purporting to act as their trusted and confidential adviser. It is therefore no answer to the question before us, as suggested by counsel, to say that "counsel is not acting adversely to his client when he is taking a necessary step to thwart the prearranged plan and is endeavoring to prevent the entry of a judgment in favor of plaintiff." This answer is based upon counsel's belief that there was a prearranged plan between the parties and not necessarily upon fact but, in any event, we cannot subscribe to the suggestion that counsel, while entertaining such belief and the intention to besmirch the character of his client in the hope of attaining a given result, may continue to act as counsel for his client while carrying out such intention. It is not inappropriate to suggest that such belief may easily arise in the mind of counsel for defendant in guest cases involving insurance carriers whenever the account given by defendant of the happening of the accident tends to show that liability exists. This is true regardless of the truth or falsity of the account thus given by defendant.

But the burden is placed upon counsel, if he entertains such belief, to act accordingly and to withdraw as counsel for defendant. Counsel cannot serve two masters and he can only properly represent the defendant so long as his duties as

counsel for defendant do not conflict with his duties as counsel for the insurance carrier. It is conceded by counsel that under the circumstances "counsel could withdraw" and could "thereafter defend upon the policy" in any action brought against the insurance carrier. ▓ But he states that "defenses upon policies are difficult to maintain" and that "as a practical matter, therefore, the only protection against a plan or scheme of this character is to permit counsel to counteract it by endeavoring to bring out the truth from his own client." Here again the argument is based upon counsel's belief that there was a prearranged plan between the parties and not necessarily upon fact but counsel's duty to withdraw as counsel for defendant arises from the existence of the belief regardless of whether such belief may be in accord with the fact. The very argument advanced shows the impossibility of the position in which counsel is placed as counsel insists that while continuing to act as counsel for defendant in the action between the parties, counsel may, without regard to the legal and ethical duties owed to defendant as defendant's counsel, act solely upon practical considerations in the interests of the insurance carrier. In other words, counsel for defendant insists upon the right, in the interests of the insurance carrier, to have the opportunity to interject the issue of collusion not only into any action which might be brought against the insurance carrier but also into the personal injury action to which the insurance carrier is not a party. Whether the carrier, after the denial of liability on its policy and after the withdrawal of counsel employed by the carrier as counsel for defendant, might properly intervene in the personal injury action or otherwise suggest to the court its claim that the action is collusive, is not a question which need be determined here. On the question under discussion, we are of the opinion that counsel for defendant was guilty of misconduct in continuing to act as counsel for defendant while acting, as above indicated and as admitted by counsel, solely in the interests of the insurance carrier.

▓ The question remains as to whether such misconduct of counsel for defendant was prejudicial to plaintiff. We see no escape from the conclusion that it was. A reading of the entire record shows that the real issues presented by the pleadings were entirely beclouded by the repeated references to the issues interjected through such misconduct of counsel for defendant. The result of allowing the interjection of the

issue of collusion by defendant's counsel into cases of this character would be to make it more, instead of less, difficult for plaintiffs to recover verdicts in those cases where liability is so clear that the honest defendant's testimony must corroborate the plaintiff's. In practically every such case defendant's counsel could point to the friendship of the parties (which is necessarily present in most guest cases) and the substantial agreement of their testimony (which must exist if both are conscientiously telling the truth) and base thereon a charge of collusion between them. The doubt thus cast on the good faith of defendant by counsel standing before the jury as his confidential representative would in many cases, where the testimony of the parties was in agreement not because of collusion but because both had the highest respect for their solemn oaths to tell the truth, be impossible for plaintiff or his attorney to dispel. The confusion of a jury in a situation in which counsel reverse their normal positions, counsel for the defendant attacking his client and counsel for plaintiff upholding the defendant, may readily be imagined. Every attempt of plaintiff's attorney to establish the credibility and good faith of defendant might well be regarded by the jury as additional evidence of the collusion charged by defendant's own counsel. There is ample evidence in the record before us to sustain a verdict in favor of plaintiff and while it is true that there is also evidence sufficient to sustain a verdict in favor of defendant, we are of the opinion that the verdict upon which the judgment was based was not the result of a fair trial by reason of the misconduct to which reference has been made. That the verdict might well have been different in the absence of such misconduct is clearly indicated by the fact that, despite such misconduct, the jury remained divided after lengthy deliberation.

Before concluding, in fairness to counsel for defendant, it seems appropriate to state that we do not wish to be understood as doubting the good faith of counsel in forming the belief that collusion existed and, having reached that conclusion, in proceeding as he did. The question here presented, as we have indicated, appears to be one of first impression and counsel had no specific precedents upon which to base his conduct of the case. The good faith of counsel, however, is not the issue. We hold too high an opinion of the bar not to believe that most error committed by counsel in the trial of lawsuits is the result of a mistaken idea of the law held

in good faith by the attorney committing it; but error committed in good faith is still error, and if prejudicial, as we are convinced it was in this case, must result in a reversal.

In view of the conclusions which we have reached on the main points which have been considered, we deem it unnecessary to discuss other points raised by plaintiff.

The judgment is reversed.

Dooling, J. pro tem., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 10, 1944, and the following opinion was thereupon rendered:

THE COURT.— One of the contentions made by the defendant in his petition for a hearing and requiring special mention is that the judgment of the District Court of Appeal was not pronounced by a majority vote of that court. The judgment was rendered by Justice Spence and Justice pro tem. Dooling. Presiding Justice Nourse does not appear on the face of the judgment to have participated.

However, the minutes of the District Court of Appeal, of which judicial notice is taken (Code Civ. Proc., sec. 1875), disclose that the appeal in the case came on for argument, and was argued, on September 4, 1943, before a duly constituted court at which were present Presiding Justice Nourse, Justice Spence, and Justice Dooling sitting under regular assignment as a justice pro tempore. At the close of the argument the cause was submitted for decision. Upon the order of submission jurisdiction to decide the case attached to the court as so constituted, all three of whose members were entitled to participate in the decision, and any two of whom had the power to pronounce a judgment. No disqualification or other valid reason (rule 29, subd. (a) (3), Rules on Appeal) is advanced which would deprive the court of the power to render a judgment with the concurrence of a majority of the justices so constituting the court at the time the cause was so submitted for decision.

The petition for hearing is denied.