[Civ. No. 7618.   Fourth Dist.   July 26, 1965.]

ANTOINETTE TAYLOR et al., Plaintiffs and Respondents, v. NORLEEN G. ROSIAK, as Administratrix, etc., Defendant and Appellant.

Gray, Cary, Ames & Frye and Rudi M. Brewster for Defendant and Appellant.

Ashley, Brady & Cerniglia and Sam J. Cerniglia for Plaintiffs and Respondents.

WHELAN, J.—This is an appeal by defendant from a judgment on verdict in favor of the plaintiffs.

Plaintiffs are, respectively, the wife and three minor children of Alfred Charles Taylor, aged 24, who died on April 23, 1962, while a guest in a motor vehicle owned by Charles Edward Coffman, aged 21, and then being operated by Johnnie Howard Crismore, aged 20, who also died as a result of the collision which was the cause of Taylor's death.

The jury returned a verdict in favor of plaintiffs against the administrator of the estate of Johnnie Howard Crismore.

At the time of the fatal collision there were in the car, besides Crismore and Taylor, Coffman and Ronnie D. Andrews, aged 21, both of whom were asleep in the rear seat at the time.

The four men were sailor shipmates aboard the U.S.S. *Agerholm,* and prior to 3:30 p.m. of April 23, 1962, had agreed among themselves to go ashore on a liberty party that afternoon after work. Before leaving the ship Andrews borrowed $20 and each of the others borrowed $10 from another shipmate. All but Crismore left the ship about 3:30 p.m. and, after Taylor had attempted unsuccessfully to start his own car, in Coffman's automobile they visited three different bars where each drank in all five glasses of draft beer; they then purchased twelve 12-ounce cans of beer which they took to the home of Coffman's mother, Mrs. Noll, in National City, arriving there at about 5 p.m.; there, they and Mrs. Noll drank one can of beer each; Coffman and Taylor then left to pick up Crismore at the U.S. Naval Station in San Diego pursuant to their agreement; they were absent on this errand for about one hour, during which time Taylor again tried but failed to start his car and they did not have anything more to drink; they returned with Crismore at about 6 p.m. to the home of Mrs. Noll where the party, with the assistance of Mrs. Noll, finished off the remaining beer; the men, assisted by Mrs. Finchin, a guest of Mrs. Noll, consumed also a half pint of Scotch whiskey which had been brought along by Crismore; Taylor and Andrews then went to the neighborhood liquor store and purchased twelve more 12-ounce cans of beer, partly paid for by Taylor; upon their return to Mrs. Noll's house with the additional supply, the four men consumed it with the assistance of Mrs. Noll, who had one or two cans; the four men then started out in the car to take Mrs. Finchin to the home of friends of hers in Spring Valley, leaving at about 7:15 or 7:30 p.m., when they were in "good

shape'' (Mrs. Noll); en route, they purchased 12 more cans of beer and a quart of Scotch whiskey; the four men started drinking Scotch whiskey in the car during the trip to Spring Valley; upon their arrival at the home of Mrs. Finchin's friends, the Thompsons, all of the four men were ''pretty drunk'' (Andrews); then all started drinking the beer and Scotch whiskey as well as an undetermined amount of beer which was already in the house, all without the assistance of the Thompsons, who were nondrinkers; from the time Taylor and Coffman had left Mrs. Noll's house about 5 p.m. to get Crismore, no account was kept as to how much each drank; the four men spent between one and two hours at the Thompsons, during which time there was one interruption there when Taylor and Crismore drove away in the car, pretending to abandon the others, but returned after driving around the block; they left after having arrived at a decision to visit a bar and dancehall in Lakeside; during all of the afternoon no food had been consumed, but after leaving the home of the Thompsons they had coffee at a drive-in cafe and then went to a liquor store where they bought two quarts of beer and a fifth of Scotch whiskey, for the purchase of which all contributed; up to this point Coffman had driven the car, but he now said that he was too drunk to drive and was sleepy and turned the wheel over to Crismore; after leaving the liquor store they proceeded toward Lakeside, but ''in which direction we was going I don't know'' (Andrews); just before Andrews went to sleep Taylor was telling Crismore, ''Come on, Chris, let's hurry up and go''; from that point on Andrews did not remember what happened as he was in the back seat of the car asleep; the last thing Coffman remembered before awakening in the hospital was being in the front yard at the Thompsons where ''we were all drinking and carousing around''; that he was drunk at that time; the fatal accident occurred at 10 p.m. on a road between Spring Valley and National City when the car came around a curve on the wrong side of the highway at a speed noticeably faster than 65 miles per hour and collided with another vehicle. Taylor was found dead in the right front seat. There was a potent odor of alcohol around the car immediately following the collision.

A sample of blood from Taylor's body, taken at the county morgue within an hour after the delivery of the body, and one taken at the same time from the body of Crismore, disclosed a blood-alcohol content in Taylor's body of .02 per

cent and in the body of Crismore, of .16 per cent. A person with a blood-alcohol content of .16 per cent is under the influence of intoxicating liquor so as to affect his ability to operate a motor vehicle in the manner of a reasonably prudent person, and is intoxicated. He is physically able to perform the various functions required of the driver of a car and his intoxication may not be apparent to other persons. A person having a blood-alcohol content of .02 per cent is not by reason thereof under the influence of intoxicating liquor. A blood-alcohol content varies according not only to the amount and potency of the beverage consumed, but with the rate of consumption, inasmuch as there is a reduction in blood-alcohol content of approximately .015 or .02 per cent per hour. The maximum effect of the consumption of alcoholic beverage upon the blood-alcohol content is within one-half to three-quarters of an hour after consumption, if the person does not have food in his stomach; otherwise, the period is longer. Thus Crismore was under the influence of intoxicating liquor at the time of the collision.

There are several gaps in the evidence:

The time of leaving the Thompsons is uncertain, as is the condition of Crismore and Taylor as to sobriety at that time.

Since Lakeside is several miles to the northeast of Spring Valley, which itself is north and east of National City where Coffman's mother lived, and the collision occurred on the same road on which the group traveled to Spring Valley at a point some 3½ miles toward National City from the home of the Thompsons, there is no way of knowing the distance traveled toward Lakeside and the time spent before they changed direction to proceed to the site of the collision.

There is no evidence as to Crismore's condition when he took the wheel, or whether he drank more intoxicants after he took it; or as to whether Taylor was asleep or awake after making the remark quoted by Andrews. There was no evidence as to what happened to the two quarts of beer and the fifth of Scotch Whiskey purchased after leaving the drive-in cafe.

Respondents based their cause of action upon the alleged intoxication of the driver and his alleged wilful misconduct in the operation of the motor vehicle as the proximate cause of the death of the decedent Taylor.

Appellant's defenses were those of contributory negligence on the part of Taylor, Taylor's assumption of the risk and a third defense which, if rightly apprehended, is this: that

Taylor with Crismore and the other two men had agreed to engage jointly upon a course of conduct which involved becoming intoxicated and while intoxicated riding in a motor vehicle with one or another of the four as the operator thereof; that they entered upon the execution of the agreement and that it was while in furtherance of the agreement that Crismore was operating the vehicle at the time of the fatal collision; that the act of each of the four was the act of all of them and that Taylor therefore jointly with Crismore was operating the vehicle. Appellant thus attempts to introduce aspects of criminal conspiracy and the effects thereof into the relations and conduct of the four men.

Before the matter was submitted to the jury, defendant moved the court for a directed verdict, which was denied. The appeal is from the judgment entered on the verdict. Although respondents spend some time in arguing that an appeal does not lie from denial of a motion for directed verdict, there was no such appeal; appellant merely argues in her brief that one of the errors in law committed by the trial court was the denial of the motion. The motion for new trial was made and denied.

■ Appellant assigns as error the refusal of the court to give the following instruction, requested by appellant: ''Where one voluntarily participates in festivities leading to the intoxicated condition of an automobile driver, the law does not permit such a one to shut his eyes to the hazards of riding with the intoxicated driver and in the event of injury such a voluntary participant is barred from recovery against the driver by his own contributory negligence.'' The requested instruction is not free from ambiguity, although it was held not error to give it in *Godinez* v. *Soares*, 216 Cal. App.2d 145 [30 Cal.Rptr. 767]. It would be unprofitable to distinguish the facts in that case from those in the case at bench, so far as the propriety of the instruction is concerned, except in one respect. In *Godinez*, the driver's blood-alcohol content was .183 per cent, the guest's .147 per cent. Depending on what the instruction is thought to mean, those last mentioned facts may be important. The instruction might easily be taken to mean that the guest may not assert a failure to recognize the driver's intoxicated condition, which failure results from the guest's own befuddlement brought about by festivities jointly indulged in. Under such interpretation, the question of the guest's condition as to sobriety becomes important.

On the other hand, if the instruction be interpreted to mean that if the guest should have known of the intoxication of the driver, either because of his apparent condition, or inevitably because of the amount of alcohol consumed by the driver as observed by the guest, then the guest will be presumed to know of the driver's condition. (*Wagner* v. *Osborn,* 225 Cal.App.2d 36, 47 [37 Cal.Rptr. 27].) But this, when separated from the language of metaphor, seems to mean only that if the guest knew or should have known he may not recover.

A third more literal reading of the language would be that a guest who has participated in festivities which have induced the driver's intoxication may not fall asleep before the intoxication has manifested itself. That interpretation is rejected. The matter of the guest's being asleep has been considered in several cases. In *Whitsett* v. *Morton,* 138 Cal.App. 628, 637 [33 P.2d 54], the court said: "In the instant case the guest went to sleep while riding with an intoxicated and therefore incompetent driver. If it is contributory negligence to ride with an intoxicated driver it must also be deemed contributory negligence for a guest to go to sleep while riding with such a driver. He had no right to trust himself entirely to the driver in such a known condition, rendering himself, by sleep, unable to use any precaution or care whatsoever for his own safety." The trial court had found, however, that the plaintiff knew that the driver was intoxicated at the time he commenced to drive, and with such knowledge of the driver's intoxication the plaintiff went to sleep. (See also *Davis* v. *Nelson,* 221 Cal.App.2d 62, 67 [34 Cal.Rptr. 201].)

In *Enos* v. *Montoya,* 158 Cal.App.2d 394 [322 P.2d 472], the plaintiff had fallen asleep after having been at a beach party with the driver and others, where the driver consumed beer and the plaintiff also had been drinking beer. The test there was held to be whether the plaintiff knew or should have known that the driver was intoxicated. A refusal to instruct on contributory negligence was approved, and a judgment in favor of the plaintiff-guest was affirmed.

What appellant argues for is a conclusive presumption that an injured guest should have known when the driver took over the wheel that the driver was then intoxicated, and that he would continue to be until the injury occurred, when the following circumstances exist: If two or more persons have participated in the consumption of alcoholic beverages

jointly purchased by them, and one of them, later determined to have been intoxicated, drives a car and one of his drinking companions, while a guest therein, is injured as the result of the intoxication or wilful misconduct of the driver in the operation of the vehicle.

An examination of a large number of the many reported decisions dealing with situations having some similar facts does not disclose the recognition of any such presumption.

Such a presumption would ignore the rebuttable presumption of due care, to the extent that that presumption applies in the present case.

The presumption of due care requires a holding that no conclusive presumption exists that Taylor knew or should have known that Crismore was intoxicated while driving the car or that Taylor knew or should have known that he was exposing himself to the consequences of dangerous and wanton misconduct on the part of Crismore by remaining in the car during Crismore's operation.

Appellant argues that there is no room for the application of the presumption of due care as to which the court instructed the jury because of what appellant contends are the uncontroverted facts.

The only evidence produced by plaintiffs bearing upon the question was as to the happening of the collision, the speed of the car in which Taylor was riding, its position on the highway, the smell of alcohol about the car, the percentages of blood-alcohol, and their significance. All of that taken together does not constitute testimony which is wholly irreconcilable with the presumption. The presumption is not dispelled unless such irreconcilable testimony is produced by the party seeking to invoke the presumption. (*Scott* v. *Burke,* 39 Cal.2d 388 [247 P.2d 313] ; *Mar Shee* v. *Maryland Assurance Corp.,* 190 Cal. 1 [210 P. 269] ; *Christensen* v. *Malkin* *(Cal.App.) 43 Cal.Rptr. 669.)

It is true that the instruction was given as applying also to Crismore. Certainly as to him the presumption would not apply in view of the evidence produced by plaintiffs. However, the instruction in that respect was more favorable than otherwise to appellant.

The lacunae in the evidence that have been mentioned leave open a possibility not inconsistent with the presumption of due care on the part of Taylor. It is true that there

---

*A rehearing was granted on April 30, 1965. The final opinion is reported post, p. 114 [45 Cal.Rptr. 836].

are contradictory possibilities that are at least equally probable.

The basis of appellant's motion for a directed verdict was a contention that the evidence shows as a matter of law that Taylor was guilty of contributory negligence.

Recognizing that a finding of contributory negligence may be compelled as a matter of law (*Mundy* v. *Marshall,* 8 Cal.2d 294, 296 [65 P.2d 65]), we have yet found only one California decision involving a guest's right to recover against a driver because of intoxication in which the action of the trial court in holding a guest contributorily negligent as a matter of law was sustained. In *Hirsch* v. *D'Autremont,* 133 Cal.App. 106 [23 P.2d. 1066], a judgment was entered in favor of defendant-driver notwithstanding a verdict in favor of plaintiff-guest. The judgment was affirmed. Without detailing the evidence in that case, it suffices to mention that plaintiff at a certain point in a journey from Los Angeles to Santa Ana knew that the driver was under the influence of intoxicating liquor and that thereafter and before the accident, at a time when in Anaheim the driver left the car to enter an open and lighted store, plaintiff neither left the car nor did anything to prevent the defendant from continuing to drive. The court opined that since that testimony came from plaintiff's lips, it dissolved the presumption declared by Code of Civil Procedure, section 1963, subdivision 4.

On the other hand, it has been held that it could not be said on appeal from a judgment in favor of a guest that the guest was guilty of contributory negligence as a matter of law in riding with one who was known by the guest to have drunk intoxicating liquor of which the guest also had partaken (*Lindemann* v. *San Joaquin Cotton Oil Co.,* 5 Cal.2d 480 [55 P.2d 870] ; *McMahon* v. *Schindler,* 38 Cal.App.2d 642 [102 P.2d 378] ; *Mann* v. *Chase,* 41 Cal.App.2d 701 [107 P.2d 498]) ; and on appeal from a judgment in favor of defendant notwithstanding verdict (*Tomlinson* v. *Kiramidjian,* 133 Cal. App. 418 [24 P.2d 559]) and on the reversal by this court of a judgment based upon a directed verdict in favor of defendant driver (*Erickson* v. *Vogt,* 27 Cal.App.2d 77 [80 P.2d 533]).

In the following additional cases, judgments in favor of defendant-drivers notwithstanding verdicts in favor of plaintiff-guests were reversed: *Palmer* v. *Agid,* 171 Cal.App.2d 271 [340 P.2d 303] ; *Haight* v. *White,* 16 Cal.App.2d 426 [60 P.2d 548].

■ Contributory negligence on the part of a plaintiff-guest may be inferred from the fact that he had been in the company of defendant-driver for several hours immediately preceding the accident and knew that defendant had been drinking intoxicating liquor during that time. (*Pennix* v. *Winton,* 61 Cal.App.2d 761, 763 [143 P.2d 940, 145 P.2d 561].)

Nevertheless, whether a plaintiff-guest was guilty of contributory negligence is essentially a question of fact for the determination of the jury. (*Pennix* v. *Winton, supra,* 61 Cal. App.2d 761, 763.)

In *Pennix* v. *Winton, supra,* judgment for defendant-driver was reversed because of the misconduct of defendant's counsel. The reversal would have been uncalled for if plaintiff had as a matter of law been contributorily negligent.

■ Appellant assigns as error the court's refusal to instruct the jury as follows: ''If you find that the driver's conduct amounted to wilful misconduct or intoxication which was a proximate cause of the accident and you find further that the guest was contributorily negligent pertaining to the issue of intoxication which also was a proximate cause of the accident, such conduct of the guest bars his heirs from any recovery based upon the alleged intoxication of the driver and similarly bars them from any recovery based upon the alleged wilful misconduct of the driver if the alleged wilful misconduct was induced by the alleged consumption of alcoholic beverages.''

In at least three different places in the instructions, the jury was told that a finding of either intoxication or wiful misconduct on the part of the driver would not entitle plaintiffs to recover if the jury found either contributory negligence or assumption of risk on the part of Taylor. Appellant cites *Schneider* v. *Brecht,* 6 Cal.App.2d 379 [44 P.2d 662], in support of her claim that the requested instruction should have been given. It is clear that in *Schneider* the point at issue was whether the defense of contributory negligence was available where there was a finding of wilful misconduct. That also was the question in *Price* v. *Schroeder,* 35 Cal.App.2d 700 [96 P.2d 949]; *Reposa* v. *Pearce,* 11 Cal. App.2d 517 [54 P.2d 475]; and *Bradbeer* v. *Scott,* 193 Cal. App.2d 575 [14 Cal.Rptr. 458]. ■ Where wilful misconduct on the part of a driver is related to his intoxication, the defense of contributory negligence does apply if the negligence consists in riding with or in continuing to ride with

an intoxicated driver when the guest knows or should know of the intoxication.

The instructions as given in the case at bench made it abundantly clear that a finding of contributory negligence would defeat plaintiffs' right to recover for the wilful misconduct of the driver.

The possible contributory negligence is not confined to such matters as distracting the driver's attention, physically interfering with his person, or interfering with the steering wheel, brakes or throttle. It includes doing that which reasonably could result in a foreseeable risk, i.e., entering or remaining in the car with knowledge of the driver's intoxicated condition. Justice Traynor, dissenting, said in *Stickel* v. *San Diego Elec. Ry. Co.*, 32 Cal.2d 157, 174-175 [195 P.2d 416] : "A motor vehicle operated by an intoxicated person is an instrument of death and destruction, and it is a matter of chance when or whether an accident will occur and to whom, and how serious it will be. Even if momentarily the operator's reactions are those of a sober person, he is likely to revert to the erratic reactions of those who are not. His momentary seizure of sober behaviour may in itself be erratic and is certainly dangerous in lulling others into believing that he has full possession of his senses. Conduct involving undue risk of harm to one's self as well as to others, . . . constitutes contributory negligence. (*Meincke* v. *Oakland Garage, Inc.*, 11 Cal.2d 255, 256 [79 P.2d 91] ; *Koeppel* v. *Daluiso*, 118 Cal.App. 442, 446 [5 P.2d 457] ; see Restatement, Torts, §§ 469, 475.)" If there be a defect in the instructions as given, it would be that although the jury were informed that one does not assume the risk of a hazard unless he knows the danger; that it is not enough that he should have known the danger, the jury were not specifically instructed that it would be contributory negligence for one to become a guest in a car when he knows or as a reasonably prudent man *should know* that the driver is intoxicated, or to remain in a car after he learns or should know as a reasonably prudent man that the driver is intoxicated, given a reasonable opportunity as to time and place to leave the car.

It is true that no such specific instruction was requested. That such conduct on the part of a guest constitutes contributory negligence, apart from the possibility that it amounts also to the assumption of the risk, is clear. (*McCance* v. *Montroy*, 75 Cal.App.2d 186 [170 P.2d 109] ; *Pennix* v. *Winton*, *supra*, 61 Cal.App.2d 761, 763; *Peterson* v. *Geltz*, 118 Cal.

App.2d 794, 799 [258 P.2d 875]; *King* v. *City of Long Beach,* 67 Cal.App.2d 1, 6, 7 [153 P.2d 445]; *Jones* v. *Harris,* 104 Cal.App.2d 347, 353 [231 P.2d 561]; *Jones* v. *Pacific Gas & Electric Co.,* 104 Cal.App. 47, 58 [285 P. 709]; *Cowan* v. *Bunce,* 212 Cal.App.2d 48 [27 Cal.Rptr. 758].)

The test is whether the guest, if he did not in fact know, should as a reasonable man have known of the intoxication. (*Lindemann* v. *San Joaquin Cotton Oil Co., supra,* 5 Cal.2d 480, 490; *Tomlinson* v. *Kiramidjian, supra,* 133 Cal. App. 418, 422.)

However, the jury were given the following instruction: "If you find from a preponderance of the evidence that Alfred Charles Taylor, the deceased, was guilty of contributory negligence or voluntarily assumed the risk of his injury or death by riding in the car driven by the defendant Crismore, no recovery of damages may be had by his heirs, the plaintiffs herein." Thus they were instructed that merely riding in the car driven by Crismore, might under the circumstances constitute contributory negligence.

They were instructed also that negligence is the failure to use ordinary care, and that: "The amount of caution required of a person in the exercise of ordinary caare depends upon the danger which is apparent to him or should be apparent to a reasonably prudent person in the particular situation and circumstances involved."

The instructions are to be considered as a whole (*Hoy* v. *Tornich,* 199 Cal. 545, 554 [250 P. 565]; *Jones* v. *Harris, supra,* 104 Cal.App.2d 347, 353.)

So considered, the jury was instructed substantially as to the law applicable to the case and could hardly have been misled.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.