[No. B021053. Second Dist., Div. Seven. Dec. 16, 1987.]

BARBARA PRICE, Plaintiff and Appellant, v.
ROBERT T. GILES, JR., et al., Defendants and Respondents.

**COUNSEL**

Sassoon Sales for Plaintiff and Appellant.

Ramsey & McNulty and Jerry A. Ramsey for Defendants and Respondents.

**OPINION**

**JOHNSON, J.**—Barbara Price appeals from a judgment in a negligence action arising from a motor vehicle accident and an order denying her motion for a new trial. The two primary issues raised on appeal are whether the judgment was supported by substantial evidence and whether the trial court abused its discretion in denying her motion for a new trial. Because we conclude the trial court abused its discretion in denying Price's motion for a new trial, we reverse.

### I.   STATEMENT OF FACTS AND PROCEEDINGS BELOW

Barbara Price filed a complaint for damages against Robert T. Giles, Jr., on July 8, 1983, alleging he was negligently operating a motor vehicle when it hit a tree causing her personal injuries. The action went to trial by jury on

March 5, 1986. The jury rendered a verdict in favor of defendant and made the special finding he was not negligent. Price moved for a new trial on the grounds of insufficiency of the evidence to justify the verdict (Code Civ. Proc., § 657, subd. 6), surprise (Code Civ. Proc., § 657, subd. 3), and irregularity in the proceedings (Code Civ. Proc., § 657, subd. 1). The motion was denied. Price timely appealed.

On July 4, 1982, Price, who was 17 years old, went to the beach with her boyfriend on a motorcycle. There she was introduced to Giles who was also a minor. Price's boyfriend asked Giles who lived in his neighborhood to give Price a ride to the boyfriend's house because it was too cold for her to ride on the motorcycle. Price testified she vaguely remembers getting into Giles' pickup truck. She denied she drove the truck and did not recall wearing a seat belt.

In Giles's deposition he stated he was driving the pickup on Sunset Boulevard when he turned a corner and a red MG swerved into his lane. The pickup subsequently hit a tree. The police report quoted Giles as stating he was driving 55 miles per hour, but he maintained he was going 35 miles per hour. Counsel stipulated Giles's blood-alcohol level was .09.

The accident occurred in Suzanne Nance's front yard. She testified she was in her living room near the front of the house when she heard the accident. She did not hear any tires screeching. When she opened the door she saw Giles in the passenger seat. Price was draped over the steering wheel. She observed Giles open the passenger door and get out. He then started to pull Price out from behind the steering wheel. Nance stated she told him she did not think he should move Price since she might be injured. She told the police at the scene of the accident what she had seen. Her observations were noted in the police report.

Giles and Price were taken in the same ambulance to the hospital where they were both treated in the same emergency room. Giles received injuries to his legs, head, and a compound fracture of his left arm. He testified he also had a bruise on his chest from hitting the steering wheel. Price suffered injuries to her eye, nose, teeth and leg. The ophthalmologist who performed surgery on Price testified her eye injury probably occurred from a sharp object. He further testified the hospital record said Price stated she was riding in the back of the pickup truck at the time of the accident. An ophthalmologist retained by the defense described the injury to her eye as induced astigmatism of the cornea, abnormally enlarged and distorted pupil from improper surgery after the accident, and traumatic cataract.

An otolaryngologist retained by the defense to examine Price testified an examination of the medical records showed Price had suffered nasal and

septal fractures. Her patient history report showed Price had stated she had been thrown from a vehicle after it ran off a cliff and hit a tree.

## II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED PRICE'S MOTION FOR A NEW TRIAL

Price contends the trial court abused its discretion when it denied her motion for a new trial. First, Price argues a new trial should be granted on the ground of irregularity in the proceedings (Code Civ. Proc., § 657, subd. 1) because defense counsel allegedly interjected the issue of collusion between plaintiff and defendant into the trial. Second, she argues surprise (Code Civ. Proc., § 657, subd. 3) on the basis her counsel had no reason to expect that defense counsel would state he did not think Giles was the driver of the vehicle. Because we hold the trial court abused its discretion when it denied Price's motion for a new trial because of irregularity in the proceedings, we do not consider the second ground of surprise.

■ An order denying a motion for a new trial is not directly appealable (see Code Civ. Proc., § 904.1) but may be reviewed on appeal from the judgment. (8 Witkin, Cal. Procedure (3d ed. 1985) Order Denying New Trial, § 137, pp. 540-541.) ■ The trial court is accorded such wide discretion in ruling on a motion for a new trial (*City of Los Angeles* v. *Decker* (1977) 18 Cal.3d 860, 871-872 [135 Cal.Rptr. 647, 558 P.2d 545]) " 'that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.' " (*Kolar* v. *County of Los Angeles* (1976) 54 Cal.App.3d 873, 880 [127 Cal.Rptr. 15], quoting *Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].)

In *Pennix* v. *Winton* (1943) 61 Cal.App.2d 761, 766, 772 [143 P.2d 940] defense counsel was found guilty of misconduct because he introduced the issue of alleged collusion between plaintiff and defendant into the case. It was conceded by the parties defendant's counsel had been retained by the insurance carrier. (*Id.,* at p. 767.) Defense counsel attempted to impeach his client and a main theme was to attack the character and veracity of both plaintiff and defendant. (*Id.,* at p. 769.) The court concluded defense counsel was guilty of misconduct when he continued to represent defendant while acting solely in the interests of the insurance carrier. (*Id.,* at p. 775.) It reasoned defense counsel was ethically obligated to terminate the relationship when he had reason to believe that the discharge of his duties to the insurance carrier was in conflict with those of his client. (*Id.,* at p. 774.) The judgment was reversed on the basis plaintiff did not receive a fair trial. (*Id.,* at p. 776.)

In the case at bar defense counsel stated to the jury in his opening argument that he was confused by the evidence, but he thought his client was driving. Later in chambers he advised the trial court he did not believe his client. He stated "I believe that this young lady was driving and I've got some pretty hard evidence right now and I'm going to have to tell them [the jury] I don't think my client in his deposition was truthful and there is something wrong in his case." Later, when defense counsel again questioned defendant's veracity, the trial court reminded him he was not representing the carrier. In closing argument defense counsel told the jury that defendant had been less than candid in his testimony. He stated: "I have been doing this type of work for a couple of years now and in a couple of years or more that I've been doing this I have never in my life and never thought I would stand before a jury and tell the jury that I think my client has been less than candid with us. I'm going to do that now. And I'm telling you that I don't think Mr. Giles has been candid with us in this courtroom, with me, with you, with the court. It's not a very easy thing to do to tell you that. I don't know how else to tell you."

Defense counsel also intimated plaintiff and defendant had some sort of personal interest in each other because plaintiff referred to defendant as "Bobby" and sat in the cab of the pickup truck with him.

We recognize that *Pennix* involved a blatant and almost vicious assault by defense counsel against his client. In our case there is a less direct questioning of Giles's truthfulness and a more subtle suggestion of collusion. Nonetheless, defense counsel's actions manifested a conflict of interest between his client, the insured, and his employer, the insurer. Even though it may appear that defense counsel acted in Giles's interest when he stated to the trial court and jury he did not think his client was driving the vehicle, he, in fact, was impugning his own client's integrity by making it appear Giles had committed perjury or conspiracy. (See *Pennix* v. *Winton, supra,* 61 Cal.App.2d at pp. 771-772; Pen. Code, §§ 118, 182.) **(3)** We agree with the *Pennix* court that ". . . the duties of counsel toward his client are not affected by the fact that the misconduct of counsel toward his client may have resulted in a verdict in favor of his client." (*Id.,* at p. 774.) Moreover, once defense counsel had indicated to the jury his client was not credible, and impliedly had lied about driving the vehicle, it was impossible for Price to receive a fair trial. A jury is unlikely to believe a party his own lawyer says he disbelieves even if that party, in fact, is telling the truth, the whole truth and nothing but the truth. Under *Pennix* such an action on the part of defense counsel warrants reversal.[1]

---

[1] At oral argument, counsel for the insurance company raised the specter the company might find itself bound by a judgment for the plaintiff predicated on false testimony should the lawyer representing its insured, Giles, on retrial fail to introduce evidence contradictory

■ We find the trial court abused its discretion when it denied Price's motion for a new trial on the ground of irregularity since defense counsel interjected the issue of his own client's perjury and collusion into the case and thus acted adversely to his client's interests.

## DISPOSITION

The judgment is reversed. Appellant is to receive her costs.

Lillie, P. J., and Thompson, J., concurred.

---

to Giles's testimony he was driving the vehicle. However, if Giles indeed is lying he is committing fraud and if he is doing so for the purpose of allowing plaintiff Price to obtain money from the insurance company he is in collusion with her. Thus, if in a subsequent lawsuit against the insurance company to enforce payment of the judgment the company can prove fraud or collusion they would not be bound by the judgment in the lawsuit between plaintiff and insured. (See, e.g., dicta in *Bonfils* v. *Pacific Auto Ins. Co.* (1958) 165 Cal.App.2d 152, 162-163 [331 P.2d 766] [". . . fact essential to recovery, . . . *in the absence of fraud or collusion,* is conclusively established against an insurer given an opportunity to defend, and may not be relitigated in a subsequent action against it, . . . to recover the amount of that judgment" (italics added).]; *Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 561 [334 P.2d 881] ["An insurer . . . is bound by a judgment in the action, *in the absence of fraud or collusion,* as to all material findings of fact essential to the judgment of liability of the insured" (italics added)].) See Civil Code section 2778, subdivision 5, which states: "If, after request [to defend], the person indemnifying neglects to defend the person indemnified, a recovery against the latter suffered by him *in good faith,* is conclusive in his favor against the former; . . . ." (Italics added.)